In re Cline.

[Cite as In re Cline, 3 Ohio App. 2d 345.]

(No. 629—Decided January 9, 1964.)

*Mr. Cedric Stanley,* for appellee Benjamin E. Cline.
*Mr. Mark McElroy,* attorney general, and *Mr. John A. Hoskins,* for appellant Ohio State Racing Commission.

CRAWFORD, J. This appeal is taken by the Ohio State Racing Commission from a judgment of the Common Pleas Court

reversing a finding and order made by the commission revoking the owner's license of Benjamin E. Cline.

The commission has adopted Rules of Racing pursuant to the authority granted to it so to do by Section 3769.03, Revised Code.

Rules 5, 6 and 7 supply the following definitions:

"5. A 'permit' is a permit issued by the Commission to conduct a horse racing meeting in Ohio.

"6. A 'license' is a license issued by the Commission.

"7. A 'permit holder' or 'association' is a person, group of persons, association, corporation or trust who or which has been granted a permit to conduct a horse racing meeting."

Rule 65 provides:

"Any license issued by the Commission may, after a proceeding before the Commission, be revoked for corrupt, fraudulent or improper practice on the part of the holder, or for conduct detrimental to the best interests of racing."

Rule 98 provides:

"No permit holder shall use any unlicensed person in any position for which a Commission license is required; provided, however, that a representative of the Commission may give temporary approval to the use of any person who has applied for a license.

"No permit holder shall issue a badge to any person of whom a license is required until substantial evidence is presented that the recipient of the badge has applied for his license.

"Each commercial permit holder shall submit to the Commission both a list of licensees to whom badges are issued and the names of all other persons, except members of the working press, to whom such permit holder intends to issue badges or admission passes for the entire meeting.

"Commercial permit holders shall issue badges to anyone entitled to be in the stable area and shall be responsible for unlicensed persons in such areas."

Cline was charged with violation of Rule 65 in the following words:

"* * * the said Benjamin E. Cline on or about the morning of August 23, 1960, was on the premises of River Downs

race track without authorization in the stall of the horse, 'Choice Pick,' winner of the fourth race on August 23, 1960, which horse was found from an analysis of its urine to have had a drug of the nature of procaine administered to it. This unauthorized presence in the stall of the horse 'Choice Pick' on the part of the said Benjamin E. Cline, constituted improper practice on the part of a racing commission license holder.''

After hearing, the commission adopted its referee's findings of fact and conclusions of law. The first finding of fact was:

"On August 23, 1960, in the morning, Benjamin E. Cline, a licensed owner, was on the premises of River Downs race track without authorization in the stall of the mare Choice Pick.''

The first conclusion of law was:

"The charge is proved.''

Cline appealed to the Court of Common Pleas which reversed the order of the commission revoking his license. The court found that the order of the commission was not supported by reliable, probative and substantial evidence and was not in accordance with law, and that appellant, Cline, was not engaged in conduct detrimental to the best interests of racing and was not engaged in improper practice.

This court previously overruled a motion of Cline, the appellee here, to dismiss the present appeal taken by the commission, because we believe a construction and interpretation of Rule 65 is required and that the judgment is, therefore, appealable by the commission under the provisions of Section 119.12, Revised Code. Hence, this court may also review and determine the correctness of the judgment that the order of the commission is not supported by any reliable, probative and substantial evidence.

We believe there is reliable, probative and substantial evidence to support the commission's first finding of fact recited above. Two witnesses testified that Cline was in the stable area at River Downs on the date alleged. One testified that he was in the stall of the mare Choice Pick; the other testified that he saw him walking toward the stall but was not in a position to see whether he entered it.

Cline testified that about the date in question (he was not precise as to the date) he was in the barn or stable area trying to sell hay to Harry Rutter, a permit holder; that he had a sample of the hay with him; that he had seen Rutter at a restaurant in the parking area and told him about it; and that Rutter told him he had plenty of hay at the time but he might use some later.

Cline testified:

"I don't remember whether that was August—the day she win or the day before. I took a sample of hay down there for Harry to look at. I parked out in the parking area and I saw him at the restaurant. I told him I had a sample of hay if he wanted to look at it. I walked over to the parking lot. He said he had plenty right now, but he might use some in a week or ten days, so I told him if he would get the boys to come up here, he could have this hay. I didn't want to haul it back home.

"He said, 'Come on and drive on down with me.'

"I said, 'I'm not supposed to be in there.'

"He said, 'Well, they will let you in to see me.'

"I drove through the gate, down to the stable, and unloaded the hay and I went out. Now, I think that was the day before or it might have been the day that she win.''

Harry Rutter did not testify.

Cline testified further that he had previously owned Choice Pick and that on one occasion prior to August 23, on or about a day when the mare ran second, he was in the stall looking at her ankle which had been swollen when owned by him, and that he found the swelling gone and the ankle cool.

Thus there was presented a question of fact for the referee who was the trier of the facts. Upon review, we are bound to say that the referee had reliable, probative and substantial evidence to support his finding of fact that Cline was in the stall on August 23.

Even Cline's own account does not indicate that Harry Rutter authorized him to enter the stall.

There can be no doubt that the entering of the stall by an unauthorized person constituted "improper practice" and "conduct detrimental to the best interests of racing."

As the referee and the commission correctly declared, the fact that the charge contains an assertion that the "horse was found from an analysis of its urine to have had a drug of the nature of procaine administered to it" is wholly irrelevant. It is unfortunate that this assertion was made. It introduces an element of confusion. It probably induced Cline to protest his innocence of any wrongdoing, although his motive is not in issue. The offense which he was found to have committed was not *malum in se,* but only *malum prohibitum.*

There was some contention that Cline was being penalized for Rutter's failure to issue him a badge to which he claims to have been entitled. He is not charged with such responsibility. He is charged with acting without authorization, not without a badge. Apparently a badge is merely a convenience to the permit holder and a protection to an authorized licensee.

It is contended that the offenses described in Rule 65 and charged against Cline are void for uncertainty. In light of the related rules and statutes we perceive no vagueness or uncertainty as to their applicability to the facts found in this case.

Some of the cases cited will serve as well as any to answer this contention. In *Beverstock, a Taxpayer,* v. *Bd. of Education,* 75 Ohio St. 144, at 149, the Supreme Court declared the duty of the court:

"* * * to so construe a statute, if possible, as to give it a sensible effect and make it of binding force. A statute can not be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations, will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. * * *"

In the second paragraph of the syllabus in *State Racing Commission* v. *Robertson,* 111 Ohio App. 435, it was held:

"2. The phrases, 'improper practice on the part of the holder' and 'for conduct detrimental to the best interests of racing,' employed in a regulation of an administrative agency, are too broad and indefinite to impose liability for conduct not having a direct relationship to the subject sought to be regulated."

That case involved proceedings to discipline a jockey for the offense of petit larceny which had no connection whatever with racing. On page 440 of the opinion Judge Fess said:

"* * * Assuming the power to license jockeys and regulate their conduct is properly derived from Section 3769.03, Revised Code, any such regulation must have a reasonable relationship to the power to regulate horse racing. Although the question is not free from doubt, we do not go so far as to hold Rule 68 invalid *ipso facto,* but do hold that its terms should be so construed as to relate directly to the conduct of horse racing. * * *"

The charge here does relate directly to the conduct of horse racing.

The judgment of the Court of Common Pleas will be, and hereby is, reversed and the order of the commission affirmed.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.