THE STATE OF OHIO, APPELLANT, *v.*
YOUNG, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.*
FORBES ET AL., APPELLEES.

[Cite as State v. Young (1980), 62 Ohio St. 2d 370.]

(Nos. 79-728 and 79-1124—Decided June 18, 1980.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Leonard Kirschner, Mr. Thomas P. Longano* and *Mr. F. David Albanese,* for appellant in case No. 79-728.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. George J. Sadd,* for appellant in case No. 79-1124.

*Mr. Brett Goodson,* for appellee in case No. 79-728.

*Messrs. Berkman, Gordon, Kancelbaum, Levy & Murray, Mr. Bernard A. Berkman* and *Mr. J. Michael Murray,* for appellees in case No. 79-1124.

PAUL W. BROWN, J. In recent years the growing problem of organized crime has received heightened attention by this state, and indeed by our entire nation. Many legislative bodies, including the United States Congress, have sought to combat these criminal activities through the enactment of

legislation designed to reach deep within criminal organizations. To this effect, our General Assembly enacted R. C. 2923.04. We so preface this opinion only to make clear that our examination of this provision relates only to its constitutional posture and is not intended as an indictment of the General Assembly's well-intended motives.

Appellees' primary contention in the instant cause is that the statute is unconstitutionally vague under the Fourteenth Amendment to the United States Constitution. It is well established that criminal statutes are void for vagueness under the Due Process Clause of the Fourteenth Amendment if they fail to contain "ascertainable standards of guilt." *Winters* v. *New York* (1948), 333 U.S. 507, 515. See, also, *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26, 30.

We noted last term that "the proper standard for determining if a statute is vague is found in *Connally* v. *General Construction Co.* (1926), 269 U.S. 385, and *Grayned* v. *Rockford* (1972), 408 U.S. 104." *State* v. *Phipps* (1979), 58 Ohio St. 2d 271, 273. In *Connally* v. *General Construction Co.*, *supra*, the United States Supreme Court, at page 391, stated:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.***" (Citations omitted.)

The standard was further examined in *Grayned* v. *Rockford, supra,* at pages 108-109, wherein it was explained that:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap

the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

The statute in question must be reviewed against this constitutional background.[1] R. C. 2923.04 provides that:

"(A) No person, with purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following:

"(1) Organize or participate in organizing a criminal syndicate or any of its activities;

"(2) Provide material aid to a criminal syndicate or any of its activities, whether such aid is in the form of money or other property, or credit;

"(3) Manage, supervise, or direct any of the activities of a criminal syndicate, at any level of responsibility;

"(4) Furnish legal, accounting, or other managerial services to a criminal syndicate;

"(5) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of a type in which a criminal syndicate engages on a continuing basis;

"(6) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of violence;

"(7) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of bribery in violation of section 2921.02 of the Revised Code.

"(B) Whoever violates this section is guilty of engaging in organized crime, a felony of the first degree.

"(C) As used in this section, 'criminal syndicate' means

---

[1] The state in this cause relies heavily upon Section 1952, Title 18, U.S. Code, citing that federal interstate racketeering statute because it has withstood constitutional attacks on grounds similar to those claimed here. See, *e.g., Bass* v. *United States* (C. A. 8, 1963), 324 F. 2d 168, 173. We find an analogy to that law to be totally unpersuasive because that federal law does not contain identical provisions to those contained in R. C. 2923.04, nor was our statute patterned after that provision in the United States Code. The two laws are, in fact, almost completely different, except for the type of activity they attempt to prohibit.

five or more persons collaborating to promote or engage in any of the following on a continuing basis:

"(1) Extortion or coercion in violation of section 2905.11 or 2905.12 of the Revised Code;

"(2) Compelling or promoting prostitution, or procuring in violation of section 2907.21, 2907.22, or 2907.23 of the Revised Code;

"(3) Any theft offense as defined in section 2913.01 of the Revised Code;

"(4) Any gambling offense as defined in section 2915.01 of the Revised Code;

"(5) Illegal trafficking in drugs of abuse, in intoxicating or spirituous liquor, or in deadly weapons or dangerous ordnance as defined in section 2923.11 of the Revised Code;

"(6) Lending at usurious interest, and enforcing repayment by illegal means;

"(7) Any offense, for the purpose of gain.

"(D) A criminal syndicate retains its character as such even though one or more of its members does not know the identity of one or more other members, and even though its membership changes from time to time."

The complexity of R. C. 2923.04 is readily apparent, and it is therefore necessary to analyze individually the various components of this statute to determine its constitutionality as a whole. For reasons stated hereinafter, it is our considered opinion that such an examination results in the inescapable conclusion that the statute is deficient in at least five respects and, thus, cannot pass constitutional muster.

While this court will attempt to construe the language of a statute in order to sustain its validity, "it must be recognized that a court, in interpreting a legislative enactment, may not simply rewrite it***." *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 71. See, also, *Crane* v. *Cedar Rapids & Iowa City Ry. Co.* (1969), 395 U.S. 164, 167.

We also note that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States* v. *Bass* (1971), 404 U.S. 336, 348. The standards for vagueness also require more precision in the criminal context, than in other situations, such as in a regulatory context. *Salem* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 244, 246.

With these principles of statutory construction in mind we turn to R. C. 2923.04(A). First, in viewing division (A) of R. C. 2923.04, we recognize that a person must act with a "purpose to establish or maintain a criminal syndicate or to facilitate any of its activities," to be brought within the statute's prohibitions. The General Assembly clearly provided a scienter requirement of "purpose" as defined by R. C. 2901.22(A). The statute, however, does not demand that this purpose must be manifested in the "facilitation" of a syndicate's *illegal* activities.

A three-judge federal panel, composed of District Judges Duncan and Kinneary together with Circuit Judge Peck, held subsection (A)(4) of R. C. 2923.04, dealing with legal, accounting, and managerial services, unconstitutional,[2] aptly pointing out that:

"The scienter element in R. C. 2923.04 does little to limit the reach of the statute. The intent required is a 'purpose to * * * facilitate *any* of [the criminal syndicate's] activities.' As written, then, the scienter element is not limited to activities undertaken to facilitate the *illegal* activities of a criminal syndicate. This is important; a criminal syndicate may engage in many activities which are not in and of themselves illegal. Some such activities, such as reporting income for federal tax purposes, are in fact required by law." *Amusement Devices Assn.* v. *Ohio* (1977), 443 F. Supp. 1040, 1051.

We are asked by appellant to make the assumption that the General Assembly intended to limit this scienter requirement to illegal activities. This reading, however, would be contrary to the clear language of the statute and would require reading the term "illegal" not only into R. C. 2923.04(A) but also into subsections (A)(1), (A)(2) and (A)(3). It is argued

---

[2] This federal case is not binding upon this court, and we note the decision rendered in that case only as supporting authority. That case, brought under Section 2281, Title 28, U.S. Code, which has subsequently been repealed, resulted in a declaratory judgment deposing R. C. 2923.04(A)(4) on federal constitutional grounds. This finding was based upon First Amendment associational rights, the Sixth Amendment right to counsel, as well as due process vagueness concerns. R. C. 2923.04(A)(4) is not directly before this court in the instant cause, but because we are holding the scienter provisions of R. C. 2923.04(A) as well as the definitional provision contained in R. C. 2923.04(C) invalid, the entire statute must fail as being unconstitutionally vague.

that this is the only statutory construction possible, but at least one Court of Appeals that held the statute to be constitutionally valid, read the statute literally, and construed it to reach a person who seeks to aid a criminal syndicate in *any* of its activities, legal or illegal. *State* v. *Powell et al.,* Court of Appeals for Summit County (November 28, 1979, C.A. Nos. 8878 etc.).

To read R. C. 2923.04(A) as enacted, without insertion of the word "illegal" into the scienter requirement presents obvious legal difficulties. There exists a possibility that lawful activity may be punished under the statute as written. For example, a person selling eggs to a restaurant, known to be operated by a criminal syndicate, is aiding the activities of that organization and is thus within the scope of R. C. 2923.04. Criminal responsibility has never been assigned, however, to the vendor who supplies goods readily available on the open market. See Lafave & Scott, Criminal Law, Section 64. Punishing such innocent conduct cuts against the grain of our entire system of criminal justice. *Papachristou* v. *Jacksonville* (1972), 405 U.S. 156. The General Assembly, in all probability, did not intend to reach such conduct, but may have sought to prohibit other activities that assist the legal operations of a criminal syndicate. One can envision primary functionaries within a criminal syndicate who restrict their activities to the syndicate's lawful operations, yet channel the profits from such activities into unlawful activities. These individuals may incur criminal responsibility for their actions and may be punished by a properly drafted statute.

R. C. 2923.04(A) as drafted, however, fails to specify with reasonable clarity what kinds of activity it prohibits and, therefore, is unconstitutionally vague. It is a fundamental principle that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta* v. *New Jersey* (1939), 306 U.S. 451, at page 453 (footnote omitted).

There is a second independent problem with the scienter requirement in R. C. 2923.04(A). This problem results because there is no requirement that a person know that his actions are aiding a criminal syndicate. An individual involved in the legal activities of a group, unaware of and with no connection to the

unlawful side of the organization, is brought within the statute's prohibitions. For example, a real estate broker who handles the purchase of an apartment complex and an individual who then manages that complex, both have the purpose to engage in their respective conduct, but they have no intention of aiding a criminal operation. Yet, if a "criminal syndicate" is the purchaser, these individuals are within the purview of R. C. 2923.04, because they have assisted the activities of that organization. The same conduct may be either legal or illegal depending upon whether it aided a criminal syndicate.[3]

The vague language of the statute, which subjects an individual to criminal sanctions for activities, the legality of which cannot be determined solely by the conduct itself but must be determined by factors which a person may be unaware of at the time of the conduct, violates due process. R. C. 2923.04 lacks the ascertainable standards of guilt that "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden***." *United States* v. *Harriss* (1954), 347 U.S. 612 at page 617; *Palmer* v. *Euclid* (1971), 402 U.S. 544.

The importance of clarity in the scienter requirements cannot be overemphasized in light of the sweeping reach of the statute and the stringent sanctions provided by R. C. 2923.04(B).[4] The statute is far-reaching due to the definition of "criminal syndicate" contained in R. C. 2923.04(C). A criminal syndicate is defined as "five or more persons collaborating to

---

[3] As the United States Supreme Court has recognized in another context, "[t]he very absurdity of these possibilities brings into focus the extraordinary ambiguity of the statutory language." *Cramp* v. *Bd. of Public Instruction of Orange Co.* (1961), 368 U.S. 278, 286.

[4] We recognize the importance of a clear scienter element in upholding a legislative enactment. See *Colautti* v. *Franklin* (1979), 439 U.S. 379, 395. We, however, note that the inclusion of a scienter requirement does not render a statute automatically constitutional. The federal court, which held R. C. 2923.04(A)(4) to be unconstitutional, in reviewing United States Supreme Court precedent stated:

"***[W]hile that Court has held that the presence of a scienter element *may* save a statute which otherwise would be unconstitutionally vague***[citations omitted], the Supreme Court has never to our knowledge held that the imposition of a scienter element upon a statute necessarily renders the statute's prohibitions sufficiently precise to withstand a vagueness challenge." *Amusement Devices Assn.* v. *Ohio, supra,* at page 1051.

promote or engage in": (1) extortion or coercion; (2) prostitution; (3) theft; (4) gambling; (5) illegal traffic in drugs, liquor, or firearms; (6) usury; or (7) any offense for the purpose of gain.

The first six parts of R. C. 2923.04(C) incorporate by reference many specific offenses. These offenses range in classification from a minor misdemeanor (public gaming, R. C. 2915.04[D]) to a first degree felony (illegal trafficking in drugs, R. C. 2925.03[D][6] and [7]). The final part of R. C. 2923.04(C) includes any offense for the purpose of gain. It is not clear that this subsection is intended to be limited only to *financial* gain. Even assuming, *arguendo,* that it is limited to monetary gain, it is still broad enough to encompass minor misdemeanors such as violating the state's home solicitation requirements R. C. 1345.21 *et seq.* and R. C. 1345.99. This provision leaves one unable to determine precisely how many separate offenses are included under R. C. 2923.04(C), because a great percentage of our Criminal Code proscribes offenses committed for financial gain. Additionally, it is also difficult in some instances to determine whether the perpetrator who violates a statute does so for the purpose of gain in any sense of that word.

The lower courts have properly pointed out that the criteria chosen by the General Assembly to mark the boundaries of the statute are extremely broad and bring many activities within the statute that would not normally be considered to be conduct engaged in by organized crime. Five persons who participate in a betting pool each time they attend a football game would fall within this definition of a criminal syndicate because their conduct constitutes a violation of R. C. 2915.04, governing public gaming. These persons, however, without clear notice from R. C. 2923.04, have no way of knowing that they are committing a felony of the first degree and are thus subject to a possible jail sentence of 25 years and a $10,000 fine. The nature of their conduct itself does not indicate to them the penalties that are possible. R. C. 2923.04 makes no distinctions in its sentencing provisions but requires the same sanctions regardless of the nature and gravity of the underlying offense. In viewing this situation it is clear that the

statute's requirements are simply not sufficient to limit its application to established criminal operations.[5]

In addition, the General Assembly has delegated a great deal of discretion to prosecutors who may choose to treat these individuals as if they are engaging in organized crime or who may simply prosecute them for a minor misdemeanor, which involves a maximum $100 fine.[6] While prosecutors have a certain amount of discretion inherent in the charging of every defendant, we can think of no situation to compare with the discretion given here, with two possible offenses on opposite ends of the penological spectrum, chargeable from the same conduct.

We note these shortcomings of R. C. 2923.04 not to question the wisdom of the legislation's provisions, but to demonstrate the great number of individuals and the diverse factual situations that are brought within the statute. The scienter element, and portions of the statute to be discussed hereinafter, must be of sufficient clarity, that they put persons of common intelligence on notice that their conduct violates

---

[5] Appellant calls our attention to R. C. 109.83(A), a statute not in Ohio's Criminal Code, but contained within a chapter which defines the power of the state Attorney General's office. R. C. 109.83(A) states that:

"When directed by the governor or general assembly, the attorney general may investigate any organized criminal activity in this state. 'Organized criminal activity' means any combination or conspiracy to engage in criminal activity as a significant source of income or livelihood, or to violate, or aid, abet, facilitate, conceal, or dispose of the proceeds of the violation of, criminal laws relating to prostitution, gambling, counterfeiting, obscenity, extortion, loan sharking, drug abuse or illegal drug distribution, or corruption of law enforcement officers or other public officers, officials, or employees."

The definition of "organized criminal activity" contained in this statutory provision indicates that the General Assembly perceived the precepts of such activity much more narrowly in this investigative context when it enacted this statute several years prior to the passage of R. C. 2923.04.

This definition cannot be read into R. C. 2923.04 to limit its application. The term "criminal syndicate" is used throughout R. C. 2923.04, and its definition is in irreconcilable conflict with the one contained in R. C. 109.83(A). The term "organized crime" appears only once within the text of R. C. 2923.04, and in no way acts to define the conduct proscribed by the statute. See R. C. 2923.04(B). The only purpose the definition may serve in this context is to further confuse those individuals who seek to determine if their conduct falls within statutory prohibitions regarding organized crime.

[6] See Comment, The Disparate Sentencing Provision of Ohio's Organized Crime Statute, 46 Univ. of Cinn. L. Rev. 583.

R. C. 2923.04. Their conduct, in and of itself, may not seem to make them subject to penalties of this magnitude. We are requiring significant precision in this context, a situation where many activities have been elevated to first degree felonies.

A third problem with R. C. 2923.04(A) is the undefined term "facilitate." No guidance is given in this statute as to the point at which incidental assistance to a criminal syndicate is transformed into "facilitation," which will render one open to harsh criminal sanctions. It is also not clear whether one must act affirmatively to be brought within this term, or whether a person by failing to act may be found to "facilitate" the activities of a criminal syndicate. One trying to ascertain whether his conduct is unlawful under this provision must guess at the meaning of the statute, contrary to the demands of due process of law.

The Committee Comment to R. C. Chapter 2923 states that R. C. 2923.04 is based largely upon the proposed Federal Criminal Code. In that code, criminal facilitation requires that a defendant knowingly provide "substantial assistance" to a person intending to commit a felony.[7] A similar definitional provision is necessary in R. C. 2923.04, for as it stands the statute indicates that there may be a conviction for "facilitation" on evidence that would not support a conviction for aiding and abetting. The statute, however, nowhere indicates the degree to which an individual's conduct must tie him to a particular criminal venture.

We also question attaching the same culpability and punishment to one who merely facilitates (whatever that term may mean), the activities of a criminal syndicate, as to one who actually organizes it and actively participates in its operation. The failure to distinguish between the organization's leaders and those who merely assist the syndicate by providing goods and services or other innocuous aid further illustrates the defective nature of the statute.

A fourth major difficulty with the statute is that the definitional term "continuing basis," contained in subsection (C) of R. C. 2923.04, is susceptible to more than one meaning. R. C. 2923.04 defines a criminal syndicate to encompass five or

---

[7] See, Note, The Proposed Federal Penal Code, 47 N.Y.U. L. Rev. 320, 341.

more persons who promote or engage in enumerated activities on a *continuing basis.* This requirement appears intended to limit the statute's reach to established criminal operations, but this provision apparently applies with equal force to a group which kidnaps an individual and detains him for several weeks or, indeed, for several hours or minutes. There is only one offense, but it is committed on a continuing basis. In comparable federal legislation similar terminology is clearly defined to encompass a minimum number of offenses, and a maximum period of time over which these offenses must occur. See Paragraph 5 of Section 1961, Title 18, U.S. Code. Anyone viewing this statute is unable to ascertain whether two offenses committed within ten years will bring about criminal responsibility under the statute. Due to the fact that there is no definition of what constitutes a "continuing basis" this basic policy decision is impermissibly delegated to prosecutors and judges for resolution on an *ad hoc* basis. *Grayned* v. *Rockford, supra.*

The fifth and final area which is unconstitutionally vague is subsection (A)(5) of R. C. 2923.04. This section imposes criminal liability on all persons who "[c]ommit, or conspire or attempt to commit, or act as an accomplice in the commission of, *any offense of a type in which a criminal syndicate engages on a continuing basis.*" Aside from the difficulty of determining what constitutes a continuing basis, discussed *supra,* this subsection demonstrates failure by the General Assembly to provide an ascertainable standard of guilt. The offense which the provision seeks to prohibit is not defined. Further, the creation of boundaries of the conduct sought to be prohibited by this subsection has been delegated to those who engage in criminal activities. It is the criminal syndicate that will decide what offenses to engage in on a continuing basis. Their decision will determine what conduct on the part of *others* will in the future constitute a violation of R. C. 2923.04(A)(5). Just as a legislative body may not delegate basic policy decisions to prosecutors and judges, such matters may not be delegated to the very criminals to be reached under a penal statute. This provision, with its circular wording exemplifies the vagueness that renders this statute unconstitutional.

The defects in the statute discussed *supra* are highlighted

when the statutory subsections are read together with their definitional subsections. For example, the ordinary person is expected to comprehend the following:

"No person, with purpose to facilitate any of the activities [R. C. 2923.04(A)] of five or more persons, collaborating to engage in [R. C. 2923.04(C)] any offense for gain [R. C. 2923.04(C)(7)], shall attempt to commit any offense of a type in which a criminal syndicate engages on a continuing basis [R. C. 2923.04(A)(5)]."

The statute read in this manner, as it must be under certain circumstances, gives no notice of what conduct is proscribed. It indicates the General Assembly's failure to meaningfully define this offense.

We recognize that by holding R. C. 2923.04 unconstitutional, we have struck down a statute that dealt with an extremely significant problem in our society. We also realize, however, that in the statute's wake organized crime may still be effectively prosecuted for the underlying offenses contained in R. C. 2923.04, as well as for the crime of conspiracy. The objective of the legislation cannot be questioned, but its sweeping reach and its imprecise terminology are incompatible with due process requirements. These constitutional considerations may not be dismissed merely because there is a laudatory legislative end sought to be achieved.

Accordingly, the judgments of the Courts of Appeals for Cuyahoga and Hamilton Counties are affirmed.

*Judgment affirmed in*
*case No. 79-728.*
*Judgment affirmed in*
*case No. 79-1124.*

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., concur.

HERBERT, LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. The majority, in the first paragraph of its opinion, properly recognizes the necessity for R. C. 2923.04. Yet, before commenting that the statute in the instant cause does not pass constitutional muster, they preface their opinion with a disclaimer for their finding of un-

constitutionality. That determination is disappointing considering that the aim of the statute is to effectively combat the abhorrent escalation of organized crime, which is often accompanied by acts of terrorism or illegal use of group pressure in order to achieve unlawful ends.

The majority did address the issue of vagueness as it pertains to R. C. 2923.04, but they failed to discuss the statute on all the issues presented to this court. Additional issues questioning whether the statute is overbroad in its scope or cruel and unusual in its punishment, or both, were also properly raised and thereby warrant discussion.

The majority's failure to address all the issues not only gives little guidance to the General Assembly in the probable redrafting of this statute, but also precipitates additional prolonged "piecemeal" judicial analysis and determinations on matters presently before this court.

These two cases and those 16 causes held by this court pending the outcome of this decision—encompassing the gamut of offenses, which includes drugs, prostitution, pornography, extortion, influencing public officials, as well as the commonplace murder, theft and assault—have already labored through the crucible of appeal and warrant more than a summary dismissal of the total statute on one limited ground. If new legislation will be forthcoming with issues now extant, but unaddressed by the majority, a final determination as to the constitutionality of any new legislation in this area will, regrettably, remain in limbo without resolution for many upcoming years.

In my view, R. C. 2923.04 is constitutional not only on the issue of vagueness, but also on the issue of overbreadth and also on the charge that the statute at bar is cruel and unusual in the punishment to be meted out upon conviction.

In prelude to a separate discussion of the three issues presented herein, I take exception to the majority's approach. They advance a microscopic view of certain words and phrases in the statute and then enlarge those words and phrases to disproportionate extremes beyond their plain meaning and thereby find constitutional dilemmas within the statute.

Furthermore, the majority and the appellees are con-

sistently jousting with phantoms when they conjure up interesting but incredibly naive and trivial hypotheticals in order to negate the statute *in toto.* If not kept within legitimate confines, every statute could be assailed in this fashion. To follow the analysis of the majority to its logical conclusion would result in a negation of any enforceable yet meaningful law in this area.

Organized crime envenoms our everyday life and unobtrusively robs each individual.[8] Inexorably, the hand of the mob surreptitiously dips into everyone's pocket, pilfering millions annually to a degree which dwarfs the state's budget.

The General Assembly has picked up the gauntlet in this area, and the prosecutors have steadfastly acknowledged the combat in the legal trenches, while this court sits timorously by and cancels the contest. The result is the condonation of the premier malady eroding the vitals of society in all shapes and forms, to wit, the arrogant strength of organized criminal activity.

I will now embark upon the legal and philosophical bases, which buttress the constitutionality of the present statute.

*I.*

It is rudimentary that a legislative enactment is entitled to a strong presumption of constitutionality. *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278, and *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 161.

The Court of Appeals, in the *Forbes* case, found R. C. 2923.04 to be vague and overbroad, and, in the *Young* case, found R. C. 2923.04(A)(1), (2), (3) and (5) void for vagueness.

---

[8] The United States Chamber of Commerce gives examples of how organized crime affects our everyday life by its indirect imposition on legitimate business:

"Spiraling insurance costs that stem from the underworld's unique set of competitive methods; inequitable tax burdens resulting from the considerable tax-dodging ability of racketeer entrepreneurs; increasing consumer anger that is evoked when syndicate-owned enterprises supply inferior goods and services or when legitimate enterprises must raise prices to compensate for underworld harassment; growing reluctance by some commercial finance companies to extend credit to businesses unfortunate enough to be operating in a racketeer-infested industry." Chamber of Commerce of the United States, Deskbook on Organized Crime (Rev. Ed. 1972), 15.

The statute at bar, when given a reasonable construction and fulfillment of its legislative intent and purpose, is definitely constitutional.

The United States Supreme Court, when pressed by a similar dilemma, stated, in *United States* v. *Harriss* (1954), 347 U.S. 612, at page 618, that:

"***[I]f this general class of offenses can be made constitutionally definite by a *reasonable construction of the statute,* this Court is under a *duty* to give the statute that construction. This was the course adopted in *Screws* v. *United States,* 325 U.S. 91, upholding the definiteness of the Civil Rights Act." (Emphasis added.)

Contra to the majority opinion, R. C. 2923.04 is not void for vagueness or overbroad in its scope when given a reasonable construction.

The doctrines of vagueness and overbreadth are not always distinguishable and often overlap. The United States Supreme Court, in *Grayned* v. *Rockford* (1972), 408 U.S. 104, at pages 108 and 114, distinguished the vagueness and overbreadth doctrines, explaining that "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," whereas "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct."

That same court, in *Colten* v. *Kentucky* (1972), 407 U.S. 104, at page 110, explained that:

"***The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

Furthermore, the element of intent has often preserved a statute from a challenge of vagueness, since the scienter requirement serves to relieve the statute of the claim that it punishes without warning an offense of which the accused is unaware. *Omaechevarria* v. *Idaho* (1918), 246 U.S. 343; *Hygrade Provision Co.* v. *Sherman* (1925), 266 U.S. 497; *Gorin* v. *United States* (1941), 312 U.S. 19; *Screws* v. *United States* (1945), 325 U.S. 91; *American Communications Assn.*

*C.I.O.* v. *Douds* (1950), 339 U.S. 382; *Boyce Motor Lines, Inc.,* v. *United States* (1952), 342 U.S. 337; *United States* v. *National Dairy Products Corp.* (1963), 372 U.S. 29; *Cole* v. *Richardson* (1972), 405 U.S. 676; and *Colten* v. *Kentucky, supra.*

The statute at bar, R. C. 2923.04, reads, in pertinent part, as follows:

"(A) No person, with *purpose* to establish or maintain a criminal syndicate or to facilitate any of its activities***." (Emphasis added.)

"Purposely" is defined in R. C. 2901.22(A) as follows:

"A person acts purposely when it is his *specific intention* to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his *specific intention* to engage in conduct of that nature." (Emphasis added.)

The statute, in the instant cause, specifically requires a purposeful act for both the establishment and maintenance of the criminal syndicate. "Purpose," as used in R. C. 2923.04, is synonymous with "intent." See *White* v. *Maxwell* (1963), 174 Ohio St. 186. The element of scienter is not absent from R. C. 2923.04 but is a necessary element thereof.

Furthermore, in subsection (C), the statute, in great detail, refers to specific sections of the Criminal Code. Many of the specific sections referred to in subsection (C) require the crime to be performed with specific intent.[9]

---

[9] For example, all the sections below require a scienter element.

R. C. 2907.21, in pertinent part, reads:

"(A) No person shall *knowingly:*

"(1) Compel another to engage in sexual activity for hire." (Emphasis added.)

R. C. 2907.22, as pertinent, provides:

"(A) No person shall *knowingly:*

"(1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel." (Emphasis added.)

R. C. 2907.23, pertaining to procuring, in pertinent part, reads:

"(A) No person, *knowingly and for gain,* shall do***the following." (Emphasis added.)

R. C. 2913.01, pertaining to theft crimes, defines "deception" as "*knowingly.*"

R. C. 2915.02, dealing with gambling, provides, in part, as follows:

"(A) (1) [*k*]*nowingly*** engage in conduct that facilitates*** bookmaking***." (Emphasis added.)

In my opinion, the plain meaning of this statute, including its reference to specific sections of the Criminal Code, clearly mandates that the proscribed acts be done with specific intent and thus is outside the parameters of objections on the basis of vagueness.

This court, in *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163, 166, has stated that: "***[T]he injection of scienter provides a precise and comprehensible standard which is well within the ability of a person of common intelligence to understand."

The majority and the appellees maintain that certain words and phrases in R. C. 2923.04 are impermissibly vague. When discussing vagueness of certain words and phrases similar to the words and phrases in the statute at bar, the United States Supreme Court, in *United States Civil Service Comm.* v. *National Assn. of Letter Carriers* (1973), 413 U.S. 548, stated, at pages 577-579, as follows:

"There might be quibbles about the meaning of taking an 'active part in managing' or about 'actively participating in***fund raising'***but there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."

So, too, with the statute at bar, the purpose of the statute as a whole does not lend itself to concise specific wording.[10]

The majority and the appellees go to great lengths in soothsaying a "parade of horribles" in which marginal cases should invalidate the statute at bar as being impermissibly vague.

---

R. C. 2923.04 is premised upon those crimes which require specific intent, but only when done by five or more persons on a continuing basis in which a significant income or livelihood is produced.

[10] By its very nature, "organized crime" is a very difficult phenomenon to define. "For most purposes the term 'organized crime' has no legal configuration, although some specific attributes of syndicated criminal operations can be accurately defined." National Association of Attorneys General, Organized Crime Control Legislation (1975), 3. Thus, the General Assembly did an admirable job in defining the slippery concept known as "organized crime."

It is firmly established that, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be made where doubts might arise. *United States* v. *Petrillo* (1947), 332 U.S. 1, 7; *Jordan* v. *De George* (1951), 341 U.S. 223, 231.

This court, in *Cincinnati* v. *Hoffman, supra,* followed the above rationale of not allowing a "parade of horribles" to invalidate the statute. Paragraph three of the syllabus in that case reads:

"Where, under one state of facts, the operation of a statute is constitutional, a court will not declare it invalid because under another state of facts, not involved, its operation would be unconstitutional. (*State, ex rel. Herbert,* v. *Ferguson,* 142 Ohio St. 496.)"

Not all laws are perfectly written, and to conjure up numerous nuances has a counteracting effect on the very purpose of the statute at bar. We should address ourselves to the intent and purpose of the law rather than be bogged down with the minutia of a prophecy of dire consequences by fecund imaginations of those who strive to derogate the meaning of the law.

Furthermore, the Committee Comment to R. C. Chapter 2923 states that R. C. 2923.04 is based largely upon the proposed federal Criminal Code, and, therefore, analysis of the federal statute is quite appropriate. At first blush, it is cognizable that the federal statutes are primarily directed at controlling "organized crime," much akin to R. C. 2923.04.

Section 1952(a)(3), Title 18, U.S. Code, racketeering, prohibits interstate travel with intent to promote, manage, establish, carry on or facilitate unlawful activities.

Rather than making a determination that the federal statute is vague, the constitutionality of that section has been repeatedly upheld. The federal courts found the statute to prescribe clear standards for men of ordinary intelligence. *United States* v. *Villano* (C.A. 10, 1976), 529 F. 2d 1046, 1055, certiorari denied 426 U.S. 953; *Bass* v. *United States* (C.A. 8, 1963), 324 F. 2d 168, 173; *United States* v. *Barrow* (C.A. 3, 1966), 363 F. 2d 62, 65, certiorari denied 385 U.S. 1001; *United States* v. *Bash* (D.C. Ind. 1966), 258 F. Supp.

807, 809, affirmed *United States* v. *Miller* (C.A. 7, 1967), 379 F. 2d 483, certiorari denied 389 U.S. 930; *United States* v. *Teemer* (D.C. W.Va. 1963), 214 F. Supp. 952, 956.

The purpose and the language employed in both the federal statute and the statute at bar are similar. The Court of Appeals, in the *Forbes* case, dismissed any analysis of the federal statute in conjunction with the Ohio statute, on the grounds that the federal statute expressly limits the imposition of criminal liability to unlawful activity, whereas the Ohio statute does not so expressly limit itself.

As noted previously, it is the duty of this court, according to *United States* v. *Harriss, supra* (347 U.S. 612), to reasonably construe a statute to save it from unconstitutional claims. Thus, I readily note that it was never the intent of the General Assembly to punish innocent behavior. Furthermore, as previously discussed herein, to apply the scienter requirement to the commission of legal activities would be to expand the statute beyond its intended scope.[11]

The appellees, commenting upon the constitutionality of R. C. 2923.04, question the use of "five or more persons" as a jurisdictional requirement to invoke the statute at bar. I find the number "five" to be rationally related to the end sought by the General Assembly in enacting R. C. 2923.04. The number "five" as a jurisdictional requirement is present in at least three federal anti-criminal statutes, all of which have been held valid. See Sections 1511(b)(1)(ii) and 1955(b)(1)(ii), Title 18, U.S. Code, and Section 848(b)(2)(A), Title 21, U.S. Code.

For the foregoing reasons, a claim of vagueness in the instant cause is without merit. The language used contains a sufficient definite warning when measured by common understanding and practice. Even more simply stated, this court, in *Cincinnati* v. *Hoffman, supra,* when construing a similarly related statute, stated, at page 168:

" ' "***We believe that citizens who desire to obey the*

---

[11] This writer is cognizant of *Amusement Devices Assn.* v. *Ohio* (S.D. Ohio 1977), 443 F. Supp. 1040, which declared only R. C. 2923.04(A)(4) unconstitutional. The presence of the scienter requirement, coupled with the common-sense approach that only unlawful activity is prohibited, results in the *Amusement Devices Assn.* decision being inapposite herein.

*statute* will have no difficulty in understanding it\*\*\*" *Colten* v. *Commonwealth,* 467 S. W. 2d 374, 378 (Ky. 1971).' " (Emphasis *sic.*)

## *II.*

Appellees further assert that the statute in the instant cause is overbroad in its scope. The overbreadth doctrine may not appropriately be invoked here in this manner.

The United States Supreme Court, in discussing the overbreadth doctrine in *Broadrick* v. *Oklahoma* (1973), 413 U. S. 601, stated, at pages 610-613:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.\*\*\*A closely related principle is that constitutional rights are personal and may not be asserted vicariously.\*\*\*

"In the past, the Court has recognized some limited exceptions to these principles, but only because of the most 'weighty countervailing policies.'\*\*\*Another exception has been carved out in the area of the First Amendment.
"\*\*\*

"\*\*\*Application of the overbreadth doctrine in this manner is manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. *Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.*\*\*\*" (Emphasis added.)

A reasonable construction of the statute at bar to include a scienter requirement, coupled with the fact that R. C. 2923.04 should only apply to illegal and not lawful activities, insulate this statute from a claim of overbreadth.

The statute at bar prohibits criminal activity and not constitutionally protected activity. As the statute specifically states, activities such as bribery, extortion, promoting prostitution, theft, illegal trafficking in drugs and lending at usurious interest rates are clearly prohibited.

Furthermore, the statute is claimed to be so broad that

even minor deviations or improper actions could result in a first-degree felony.[12]

I feel this interpretation is improper since the primary impetus of the statute is not directed at minor deviations from the law, but rather is to prevent the operation of entrenched criminal syndicates, which results in illegal and financially lucrative enterprises.[13]

The definition of "organized criminal activity" in R. C. 109.83(A) reads, in pertinent part, as follows:

"* * *'Organized criminal activity' means any combination or conspiracy to engage in criminal activity as a *significant source of income or livelihood* * * *." (Emphasis added.)

Thus, even by definition, R. C. 2923.04 is limited to those activities which result in "a significant source of income or livelihood."

As noted herein, the federal anti-racketeering statute is much akin to the Ohio statute in language, purpose and design. The federal courts, when faced with similar arguments, dismissed them by noting that the anti-racketeering statute was not intended to include an occasional "floating crap game" or every "sporadic poker game."

---

[12] The appellees, in case No. 79-1124, who claim the statute at bar to be overbroad, assert the following "marginal" examples as rationale for declaring the statute unconstitutional:

"It could include the family of five who return home from their vacation each year with an unpurchased towel from their favorite motel" and "the two-table bridge club composed of suburban housewives who, once a month, travel downtown for a one-hour luncheon and fail to deposit dimes in the parking meter."

[13] The cases currently awaiting this decision and the *Young* case herein reflect the seriousness of the crimes that are to be prohibited by R. C. 2923.04.

In *State* v. *Young*, the net from the criminal activities in a seven-month period assertedly exceeded $100,000. *State* v. *Houlihan, supra,* involved a gambling operation where, as the Court of Appeals therein stated, "there would be $500.00 riding on every roll of the dice" and "this would make the house take $200.00 per hour and a six-hour night a take home of $1200 for the house." *State* v. *Byars, supra,* involved an organized syndicate of nine persons engaged in trafficking of drugs. Another series of cases, currently pending in the First District Court of Appeals, involved syndicated organizations of car thieves, *i.e.,* persons who would strip stolen cars and sell the parts to certain used car dealers who then would sell the parts to the general public, which operation involved several hundred thousand dollars over a relatively short period of time.

Thus, the statute is directed and applied toward limiting the highly sophisticated and widespread phenomenon, best described as "organized crime."

*United States* v. *Teemer, supra* (214 F. Supp. 952). See *United States* v. *Harris* (D.C. Va. 1967), 275 F. Supp. 161. Rather, the statute at bar is primarily designed to stem the clandestine flow of illegal profits of complicated networks of crime.

Accordingly, I find that R. C. 2923.04 is not overbroad in its scope in this instance.

*III.*

Appellees further assert that R. C. 2923.04 violates the Eighth Amendment's prohibition against cruel and unusual punishment. A violation of the statute at bar constitutes a first-degree felony.

It is axiomatic that the General Assembly is lodged with the power to define, classify and prescribe punishment for crimes committed within the state. *State* v. *O'Mara* (1922), 105 Ohio St. 94, paragraph one of the syllabus, and *Ex Parte Fleming* (1930), 123 Ohio St. 16, 20.

The court, in *United States, ex rel. Bongiorno,* v. *Ragen* (D.C. Ill. 1944), 54 F. Supp. 973, referred to the earlier case of *Weems* v. *United States* (1910), 217 U.S. 349, wherein the United States Supreme Court stated that the Eighth Amendment is progressive and should be regarded as a precept that punishment for crime should be graduated and proportioned to the offense committed.

In *Rummel* v. *Estelle* (1980),—U. S.—, 63 L. Ed. 2d 382, the United States Supreme Court stated, at page 391:

"Given the unique nature of the punishments considered in *Weems*[14] and in the death-penalty cases, one could argue

---

[14] In *Weems, supra,* the petitioner therein successfully attacked the imposition of punishment known as "*cadena temporal*" for the crime of falsifying a public and official document. The United States Supreme Court explicitly described the penalty meted out in *Weems*, at page 366, when it stated:

"***Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. For other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing."

without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the *length of the sentence actually imposed is purely a legislative prerogative.*" (Emphasis added.)

A violation of the statute at bar, a felony of the first degree, results in an indeterminate sentence with a penalty (R. C. 2929.11). Each of the unlawful activities prohibited by R. C. 2923.04 constitutes a crime when committed by a single individual. The statute at bar upgrades the sentence in accordance with the gravity of the crime, when the unlawful activities are performed by five or more individuals who, on a continuing basis, derive significant income or gain therefrom.

The General Assembly recognized the state's compelling interest in preventing any furtherance of these pervasive criminal syndicates which continue to grow and yield lucrative financial gain.[15] Accordingly, the punishment meted out for violations of this statute is reasonable and not violative of the Eighth Amendment.

Accordingly, the judgments of the Courts of Appeals should be reversed.

---

[15] "* * * Organized crime affects the lives of millions of Americans, but because it desperately preserves its invisibility many, perhaps most, Americans are not aware how they are affected, or even that they are affected at all. The price of a loaf of bread may go up one cent as the result of an organized crime conspiracy, but a housewife has no way of knowing why she is paying more. If organized criminals paid income tax on every cent of their vast earnings everybody's tax bill would go down, but no one knows how much." Conklin, ed., The Crime Establishment, Organized Crime and American Society (1973), 29.