POWERS *v.* OHIO STATE RACING COMMISSION.

(No. 88-CV0092—Decided April 13, 1989.)

Clermont County Court of Common Pleas.

*Gary Sargent* and *Michael Ruberg, pro hac vice,* for Sue Powers.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Robert W. Patchen,* for Ohio State Racing Commission.

ROBERT P. RINGLAND, J. Plaintiff-appellant, Sue Powers, had been licensed for fourteen years as a mutuel clerk at River Downs Race Track ("River Downs"). On September 2, 1987, she was assigned to the River Downs mutuel window where she processed wagers on the sixth race. One of the horses to run in that sixth race was No. 10, "Circle the Field." Powers was familiar with this horse inasmuch as her half-brother was its trainer. Roy Hamilton, owner of horse No. 10, placed a $300 wager on his horse at Powers' window. When Circle the Field unexpectedly won the race, Hamilton presented his winning ticket to Powers. Upon receiving the ticket, Powers ran the ticket through the mutuel machine which indicated that the ticket had been cancelled prior to the race. Powers' offer to "reimburse" Hamilton from her own funds if he would not pursue the matter was refused. After reviewing the computer records that evening, River Downs management paid Hamilton the full value of the mutuel ticket. Further investigation of the matter established that Hamilton, the owner, had not voluntarily cancelled his wager prior to the sixth race. The evidence also established that the ticket was manually cancelled at Powers' window one minute and eight seconds after its purchase. Further investigation indicated that in order for manual cancellation to take place all thirteen digits of the ticket number must be punched into the computer terminal by a mutuel clerk such as Powers.

Subsequent to this investigation, the State Racing Commission notified Powers of its intention to suspend or revoke her 1987 mutuel employee license. Powers filed a timely request for a hearing and the matter was heard before the commission in November 1987. Powers was charged under Ohio Adm. Code 3769-2-26(A)(4), violating the rules of racing; Ohio Adm. Code 3769-2-26(A)(5), perpetrating a fraud in connection with the racing of horses; Ohio Adm. Code 3769-2-26(A)(8), engaging in bookmaking or similar pursuits; and Ohio Adm. Code 3769-2-26(A)(10), engaging in conduct which is against the best interest of horse racing. The alleged conduct which gave rise to these violations was the cancellation of the Hamilton wager, without the wager being in error and without having Hamilton's permission or the wage ticket.

After the required hearing the commission adopted the report of the hearing officer who recommended that Powers' 1987 mutuel employee license be revoked, that her 1988 license be denied, and that application for future licenses be referred to the commission for consideration. From that order Powers filed a notice of appeal per R.C. 119.12 with this court on the grounds that the decision of the commission was "not supported by reliable, probative and substantial evidence and/or the order [was] not in accordance with the law."

In response, the Ohio Attorney General, representing the Ohio State Racing Commission, filed a motion to dismiss under Civ. R. 12(B)(1) alleging lack of jurisdiction as a result of Powers' failure to set forth the specific grounds for her appeal. After oral argument, this court held that precedent existed to permit Powers to amend her notice of appeal, citing *Couk* v. *Ocean Accident & Guarantee Corp.* (1941), 138 Ohio St. 110, 20 O.O. 65, 33 N.E. 2d 9, and *Toth* v. *Ohio Bur. of Unemp. Comp.* (1962), 116 Ohio App.

258, 89 Ohio Law Abs. 583, 22 O.O. 2d 83, 183 N.E. 2d 462.

The matter came before this court on the merits of the appeal after the full record had been filed with this court and memoranda submitted. The Attorney General concedes that Powers raised the issue of constitutionality during the original commission hearing, alleging vagueness of the administrative regulations, thereby preserving that issue for appeal.

The criterion for review under R.C. 119.12 is to determine whether the order is supported by reliable, probative and substantial evidence and is in accordance with the law. See *Ohio Real Estate Comm.* v. *Cohen* (C.P. 1962), 90 Ohio Law Abs. 137, 145, 25 O.O. 2d 165, 168, 187 N.E. 2d 641, 645-646. The court cannot substitute its judgment for that of the agency, see *American Legion, Clifton Post No. 421* v. *Bd. of Liquor Control* (App. 1955), 72 Ohio Law Abs. 334, 337, 135 N.E. 2d 82, 84, nor can the court substitute its determination of credibility for the hearing officer's determination of the credibility of the witnesses who appeared at the hearing.

In the present case it is apparent that the hearing officer found Powers' version of the facts less credible than the version related by the state's witnesses. Evidence was abundant to show that Powers made a conscious effort to arrange all thirteen digits and to cash in the ticket, not expecting the horse to win. In reviewing the entire record and transcript, this court finds that sufficient evidence does exist to support the hearing officer's conclusions and determination.

Assuming, *arguendo,* that Powers has raised the issue of constitutionality in the record, she argues that Ohio Adm. Code 3769-2-26(A)(4), (A)(5), (A)(8) and (A)(10) are unconstitutionally vague and violate the Fourteenth Amendment because they do not clear-

ly describe the prohibited conduct. Reviewing courts will not decide constitutional questions unless the necessity for such decision arises upon the record. See *Belden* v. *Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E. 2d 629, paragraph seven of the syllabus. However, a court may decide the facial constitutionality of the challenged statute absent an adequate record. See *State* v. *Beckley* (1983), 5 Ohio St. 3d 4, 6-7, 5 OBR 66, 68-69, 448 N.E. 2d 1147, 1148-1149. Further, the Ohio Supreme Court in *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26, 54 O.O. 2d 162, 266 N.E. 2d 571, has set forth the standards for determining if a statute or provision of law is void for vagueness. See, also, *State* v. *Young* (1980), 62 Ohio St. 2d 370, 372-373, 16 O.O. 3d 416, 417, 406 N.E. 2d 499, 501 (holding that a statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden); *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450; *State* v. *Phipps* (1979), 58 Ohio St. 2d 271, 272-273, 12 O.O. 3d 273, 274, 389 N.E. 2d 1128.

Validity of criminal statutes and the validity of administrative regulations are determined by different standards. The case of *Salem* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 244, 63 O.O. 2d 387, 298 N.E. 2d 138, dealt with the challenge of a liquor control regulation which the liquor permit holder claimed was void for vagueness. The court in *Salem* recognized that the degree of specificity constitutionally required for the wording of a criminal statute is greater than the degree of specificity required in the wording of an administrative regulation. *Id.* at 245-246, 63 O.O. 2d at 388-389, 298 N.E. 2d at 140. The court also discussed the "special relationship" between a license holder and the state. A license is a personal and temporary

permit or privilege, not a natural right, which is "* * ** * *to be enjoyed only so long as the conditions and restrictions governing its continuance are complied with * * *.'* * *" *Id.* at 245, 63 O.O. 2d at 388, 298 N.E. 2d at 140.

Administrative regulations should be read in a proper context so that the legislative purpose may attain " '* * * a special and restrictive meaning which connotes with unmistakable clarity the character of the acts prohibited.' " *Id.* at 248, 63 O.O. 2d at 390, 298 N.E. 2d at 141, quoting from *New Orleans* v. *Kiefer* (1964), 246 La. 305, 311, 164 So. 2d 336, 338. Moreover, a regulation which is read in conjunction with the statute authorizing the administrative regulation may reveal a legislative scheme adequate to safeguard against administrative capriciousness. *Smith* v. *Haney* (1980), 61 Ohio St. 2d 46, 49, 15 O.O. 3d 56, 58, 398 N.E. 2d 797, 799.

In *State Racing Comm.* v. *Robertson* (1960), 111 Ohio App. 435, 14 O.O. 2d 456, 172 N.E. 2d 628, the Franklin County Court of Appeals held that a regulation imposing sanctions " 'for conduct detrimental to the best interests of racing' " to be unconstitutional as applied to a jockey whose license had been revoked for pleading guilty to the offense of petit larceny. The court recognized that the commission had a legitimate purpose in controlling horse racing meetings. But it went on to hold that the phrase in question was "too broad and indefinite to impose liability for conduct not having a direct relationship to horse racing. * * *" *Id.* at 439, 14 O.O. 2d at 458, 172 N.E. 2d at 632. The court reserved judgment as to whether the phrase was *ipso facto* invalid. *Id.* at 440, 14 O.O. 2d at 459, 172 N.E. 2d at 632. Lastly, the court indicated that other words in the regulation, such as "corrupt" and "fraudulent" had a definite legal meaning and, therefore, the validity of those terms was beyond question. *Id.* at 439, 14 O.O. 2d at 458, 172 N.E. 2d at 632.

A very similar rule, which also permitted license revocation "for conduct detrimental to the best interests of racing," was held to be valid as applied to a race horse owner in *In re Cline* (1964), 3 Ohio App. 2d 345, 32 O.O. 2d 461, 210 N.E. 2d 737. The race horse owner in *Cline* had been found in the stall of a horse without any authorization to be there. The court distinguished the *Robertson* case and held that the regulation was not invalid since the charges against the race horse owner directly related to the conduct of horse racing.

The rules of racing, including Ohio Adm. Code 3769-2-26(A)(4), (A)(5), (A)(8) and (A)(10), are not required to have the same degree of specificity as required of criminal statutes. Powers, as a mutuel employee license holder, consented to abide by the commission's regulations concerning pari-mutuel betting, and live up to the standard of conduct required of a mutuel employee. She is, therefore, chargeable with knowledge of the provisions contained in R.C. Chapter 3769 and the rules enacted thereunder. See *Salem* v. *Liquor Control Comm.*, *supra*, at 245-246, 63 O.O. 2d at 388-389, 298 N.E. 2d at 140. Powers cannot maintain her proposition that Ohio Adm. Code 3769-2-26(A)(4) is unconstitutionally vague since she bound herself to comply with these rules when she attained the privilege of being a licensed mutuel employee. In accordance with *State Racing Comm.* v. *Robertson*, *supra*, Powers' argument that Ohio Adm. Code 3769-2-26(A)(5) is unconstitutionally vague must also be rejected since the terms "fraud" and "misrepresentation" have definite legal meanings.

By looking at the particular activities prohibited under Ohio Adm.

Code 3769-2-26(A)(8), and taking into account the legitimate interests of the racing commission under R.C. Chapter 3769, one can see that the commission has the power to regulate activity which if permitted would make pari-mutuel betting less than an honest activity. Powers engaged in a pursuit similar to touting when she attempted to gain an unfair advantage through her knowledge of a horse that was not expected to win. It would have been impractical, if not impossible, for the racing commission to have specifically spelled out every type of dishonest conduct which would result in the revocation of a license. The activities specifically mentioned in Ohio Adm. Code 3769-2-26(A)(8) were sufficient to put Powers on notice of what type of activities would be sanctioned.

Applying the law as interpreted in *In re Cline, supra,* the phrase "conduct which is against the best interest of horse racing," as used in Ohio Adm. Code 3769-2-26(A)(10), is not so vague as to be unconstitutional. Here, Powers engaged in an activity which is directly related to horse racing and, more specifically, to her licensed position as a mutuel employee. This court holds that Ohio Adm. Code 3769-2-26 (A)(10) is valid as applied to Powers since the charges against her directly related to the conduct of horse racing.

Accordingly, Powers' assignments of error are hereby overruled, and the order of the State Racing Commission is affirmed.

*Order affirmed.*