OPINION
Gary L. Schulte appeals from a judgment of the Greene County Court of Common Pleas, which dismissed his appeal from a decision of the Beavercreek Planning Commission on the basis that he had not exhausted his administrative appeals.
The facts and procedural history of the case are as follows. To put this appeal in context, we will briefly discuss the history of the parties' disputes over this particular tract of land before addressing the events that led to this particular appeal.
Schulte owns six acres of land at the intersection of U.S. Route 35 and North Fairfield Road in Beavercreek. The property lies in a B-3 General Business District. Schulte has been trying to develop the land for several years. In 1995, Schulte applied to develop two acres of the site for use as a Wendy's restaurant. The city refused to consider the application because it did not encompass Schulte's plans for the entire tract. Accordingly, Schulte submitted a plan to erect three buildings on the six acre tract: a Wendy's restaurant, a shopping center, and a convenience store. The city approved the three-building application subject to seventeen conditions related to road improvements and landscaping. Schulte estimated the cost of implementing the seventeen conditions to be approximately one million dollars, and he abandoned the proposed development.
 In 1996, Schulte applied to develop a Wendy's restaurant as the only building on the six acre tract ("the Wendy's application"). The Beavercreek planning director denied the application, and this decision was affirmed by the Board of Zoning Appeals ("BZA"), the City Council, and the trial court. The matter was ultimately appealed to this court in Schulte v. Beavercreek (Oct. 30, 1998), Greene App. No. 98 CA 2, unreported. The city argued that res judicata barred Schulte's efforts to challenge the denial of the application because the Wendy's application had not been substantively different from the prior three-building application except in the application method under which the zoning request was made. We reversed, holding that "the considerations [such as traffic control and parking] weighing upon the city's assessment of the three-building application were fundamentally different from the considerations at issue in the application proposing to build only one of those buildings." We remanded the matter to the BZA for further consideration of the Wendy's application.
In March and April 1998, while the appeal of the Wendy's application was still pending, Schulte filed two lot split applications with the Beavercreek planning commission, both of which were denied. The first application was denied on the basis that the property line that would have been created by the proposed lot split would have "transverse[d] the middle of a building" that had been approved with Schulte's three-building application two years earlier and had, according to the city, become "a permanent part of the title." Thus, the city contended that the first lot split application violated the zoning regulations. The second application was denied on the basis that, prior to applying for a lot split, Schulte was required to create an easement for the benefit of one of the lots and then to apply to the BZA "for a variance to allow creation of a parcel on an easement of access."[1]
Relying on Section 907 of the city's subdivision regulations, Schulte appealed the denial of each lot split application to the court of common pleas, wherein the first appeal was designated as Case No. 98 CV 249 and the second appeal was designated as Case. No. 98 CV 327. The trial court found that "the two cases present[ed] common questions of law" and addressed them together.[2]
On its face, Section 907 of the subdivision regulations permits an aggrieved party to appeal directly to the court of common pleas. The city filed a motion to dismiss Schulte's appeals, however, on the basis that he had not exhausted his administrative remedies. Initially, the city argued that the zoning code afforded Schulte an appeal to the BZA from the decision of the planning commission and that, because Schulte had not exhausted this administrative appeal, the planning commission's decision was not a "final order" that could be appealed to the trial court. Schulte opposed the motion to dismiss, arguing that his application had been governed by the subdivision regulations, not the zoning code, and that he had complied with the appeal procedure set forth in the subdivision regulations. The city replied to Schulte's memorandum in opposition to the motion to dismiss by asserting that Schulte had had rights of administrative appeal not only to the BZA pursuant to the zoning code but also to the city council pursuant to the city charter, and that his appeal should be dismissed because he had not exhausted either of these avenues of appeal. The city argued that the subdivision regulations were a part of the Beavercreek Code and had to be read in conjunction with the entire code and the city charter.
The trial court found that Schulte had "prematurely appealed" because he had failed to obtain a final order by appealing to the city council and had thereby failed to exhaust his administrative remedies. Thus, the trial court dismissed Schulte's appeals for lack of subject matter jurisdiction.
Schulte raises five assignments of error on appeal to this court. Because the issues raised in the first, second, and third assignments of error are interrelated, we address these assignments together.
 I. THE LOWER COURT ERRED IN HOLDING MR. SCHULTE COULD NOT FOLLOW THE EXPRESS APPEAL PROVISIONS PROVIDED IN THE SUBDIVISION REGULATIONS, AS ANY HOLDING TO THE CONTRARY DENIES MR. SCHULTE HIS RIGHT TO DUE PROCESS.
 II. THE LOWER COURT ERRED IN HOLDING BEAVERCREEK'S CHARTER DISPLACED THE SUBDIVISION REGULATIONS, AND IN HOLDING THE CITY CHARTER PROVIDED A HEARING AS CONTEMPLATED BY R.C. 2506.
 III. THE LOWER COURT ERRED IN FAILING TO STRICTLY CONSTRUE BEAVERCREEK'S REGULATORY PROVISIONS AGAINST IT.
Schulte challenges the trial court's conclusion that it did not have jurisdiction to hear his appeal. Schulte contends that the subdivision regulations which governed his lot split application provided for a direct appeal to the court of common pleas and that the trial court's view that he was required to employ procedures not set forth or referenced in the subdivision regulations violated his due process rights because he had no notice of that requirement. Schulte also claims that the city's vacillating view of how his appeal should have or could have been conducted demonstrates that the city's administrative procedures are unclear in this regard and denied him "reasonable, fair, and meaningful notice of where and how [to] perfect an appeal." Schulte further contends that any ambiguity in how his appeal should have been conducted must be construed against the city.
Due process protects the fundamental principles of liberty and justice which lie at the base of our civil and political institutions, and it guarantees those procedures which are required for the protection of ultimate fairness and decency in society. United States v. Lovasco (1977), 431 U.S. 783, 790,97 S.Ct. 2044, 2049; Abraham v. Wood Cty. Regional Water SewerDist. (1995), 107 Ohio St.3d 773, 778. In its most fundamental form, procedural due process demands that an individual must receive notice and a meaningful opportunity to be heard. Goldbergv. Kelly (1970), 397 U.S. 254, 267, 90 S.Ct. 1011, 1020; Abraham,supra, at 778; Deacon v. Landers (1990), 68 Ohio App.3d 26, 29. The right to appeal is a property interest that cannot be denied without due process of law. Atkinson v. Grumman Ohio Corp.
(1988), 37 Ohio St.3d 80, 85. Due process requirements have been applied to administrative appeals. See, e.g., Swander DitchLandowners Assn. v. Joint Bd. of Huron Seneca Cty. Commrs.
(1990), 51 Ohio St.3d 131, 133.
As a preliminary matter, we note the city's argument that Schulte's due process claim was not raised in the trial court and thus should not be considered on appeal. Schulte's argument to the trial court focused on the "confusing appeal process" created by the city's reading of its ordinances and charter, the fact that a landowner "cannot figure out what the right procedure is," and the city's apparent ability to argue that any one of the three procedures chosen by a landowner was the wrong one. Although Schulte used the term "due process" infrequently, we have no doubt that he raised the issue in the trial court.
The city also argues that no due process right was involved because Schulte did not show that any protected liberty or property interest was threatened by requiring him to pursue administrative remedies before going to court. The city correctly observes that a procedure that clearly requires an administrative appeal before appeal to the court of common pleas does not threaten liberty or property interests. However, if the city's ordinances and charter were ambiguous or contradictory in setting forth the method of appeal, and Schulte was thereby put in jeopardy of choosing the "wrong" method, a property right was at stake: a successful argument by the city that Schulte had pursued the wrong avenue of appeal, after the time for filing another type of appeal had passed, would effectively deprive Schulte of his right to appeal and to challenge the city's restriction on the use of his land.
We now turn to the substance of Schulte's arguments. Schulte claims that the subdivision regulations did not give him reasonable notice of the procedure that the city now claims he was required to follow in order to appeal from the planning director's denial of his application for a lot split. Schulte asserts that he was entitled to rely on the appeal procedure set forth in the subdivision regulations because it expressly provided for an appeal to the court of common pleas, it had not been repealed, and it did not direct him to any other administrative requirements.
It is undisputed that Section 410 of the Beavercreek subdivision regulations, entitled "Minor Subdivisions (Lot Splits)," governed Schulte's application to divide his land. Further, Section 907 of the subdivision regulations, entitled "Appeal," provided, in its entirety:
 Any person who believes he has been aggrieved by the regulations or the actions of the Planning Commission has all the rights of appeal as set forth in Chapter 711 of the Ohio Revised Code or any other applicable section of the Ohio Revised Code.
R.C. Chapter 711 governs plats, and R.C. 711.05 provides that, within sixty days after the refusal of the board of county directors to approve a plat, the person submitting the plat "may file a petition in the court of common pleas of the county in which the land described in the plat is situated to review the action of such board." Beavercreek does not contest the fact that R.C. Chapter 711 provides for a direct appeal to the court of common pleas. The city argues, however, that Schulte brought his appeal pursuant to R.C. Chapter 2506, which governs administrative appeals, and that he was precluded from doing so because the planning director's decision was not a final appealable order. The city claims that the order was not a final appealable order because Schulte had not pursued other avenues of administrative appeal set forth in the zoning code and in the city charter, and thus had not exhausted his administrative remedies. The trial court found that the planning director's decision had not been a final appealable order because, pursuant to the city charter, Schulte could have appealed the order to the city council.
The city charter does set forth a procedure by which the city council may address an appeal from "a decision of the Planning Commission, the Board of Zoning Appeals, or from any other body as to which there is a right of appeal." Thus, the trial court's finding that Schulte could have appealed the decision of the planning director to the city council appears to be correct. The crux of Schulte's due process claim, however, was that the subdivision regulations gave him no notice of this procedure and in fact pointed him to a different procedure — that of a direct appeal to the court of common pleas. The crucial question, which the trial court did not address, was whether Schulte could berequired to pursue an appeal to the city council prior to pursuing the type of appeal expressly set forth in the subdivision regulations. If Schulte did not have reasonable notice that an administrative appeal was available to him or required of him, the dismissal of his appeal to the court of common pleas based on his failure to first pursue that administrative appeal did violate Schulte's due process rights.
The appeal procedure set forth in the subdivision regulations is clear and unqualified: an appeal from the actions of the planning commission may be taken to the court of common pleas. The city attempts to splice the additional requirement of an administrative appeal into the language of this ordinance in two ways. First, the city asserts that, by appealing pursuant to R.C. Chapter 2506, Schulte chose "a clearly inappropriate statute to assert entry into the Common Pleas Court." According to the city, R.C. Chapter 2506 does not qualify as an "applicable section of the Ohio Revised Code" pursuant to Section 907 of the subdivision regulations because R.C. Chapter 2506 permits appeals only from final orders, and Schulte did not appeal from a final order. We note that it is not clear from the record that Schulte appealed to the trial court pursuant to R.C. Chapter 2506 rather than pursuant to R.C. Chapter 711, as expressly referenced in the subdivision regulations. Even if we assume that Schulte did appeal pursuant to R.C. Chapter 2506, however, the city's argument that R.C. Chapter 2506 was inapplicable because Schulte did not appeal from a final order is futile because it presumes that the question of whether Schulte was required to pursue an administrative appeal is resolved in the city's favor. If Schulte was not required to pursue the appeals procedures set forth in the zoning code and the city charter, then the planning director's order was final for purposes of R.C. 2506.01.
Second, the city contends that Schulte should be imputed with knowledge of the administrative appeals procedures set forth in the zoning code and in the city charter and should be required to comply with those procedures because the subdivision regulations "do not exist in a vacuum" but are part of the codified Beavercreek ordinances and represent a delegation of authority permitted by the charter. The city claims that, even though the subdivision regulations provide for a particular procedure, that procedure must be "tempered and viewed through the prism" of the charter and the zoning regulations. We are not impressed by this argument. The lot split that Schulte sought to accomplish was controlled by the subdivision regulations, and the subdivision regulations set forth an appeal procedure unequivocally. That procedure provided for an appeal to the court of common pleas. The fact that the subdivision regulations expressly provided for an appeal to the court of common pleas certainly implied that the proper avenue of appeal did not lie somewhere else. Thus, the city's basic tenet that a landowner cannot rely on the plain language of the subdivision regulations and, instead, has some duty to forage through all of the city ordinances and its charter to determine if any other provision might apply strikes us as disingenuous, unreasonable, and unfair. Such a requirement would indeed violate the due process rights of landowners, who should be able to determine what is required of them in a more expeditious and more reasonable manner. The city's argument is further weakened by its continued assertion that the appeal procedure set forth in the subdivision regulations applied in some situations but did not apply to Schulte. At the hearing before the trial court, the city's attorney was unable to identify a situation in which the appeal procedure of the subdivision regulations would apply under the city's interpretation of the ordinance, and the alleged distinction between Schulte's case and others to which Section 907 would apply is certainly not apparent from the language of the subdivision regulations.
Furthermore, the city has lost sight of the fact that any ambiguity about the appeals processes created by its ordinances and charter must be construed in Schulte's favor. See MotoristsDev. Co. v. Lindley (1982), 69 Ohio St.2d 220, 222; State v. Young
(1980), 62 Ohio St.2d 370, 374. Even a landowner who did conduct a comprehensive review of the city's ordinances and charter would be left confused about which of the city's "cornucopia of options" applied, as evidenced by the city attorney's own indecisiveness about whether the appeal provided by the zoning code or by the charter was most appropriate. Thus, assuming arguendo that Schulte had been aware of the provisions providing for alternate avenues of appeal, it still would not have been clear to him how he should proceed. It would only have been apparent that he had three options rather than one. Construing this ambiguity in Schulte's favor leads us to conclude that he was entitled to pursue any one of the procedures that the city had adopted. In any event, the city may not be heard to indignantly claim, as it has here, that Schulte chose the "wrong" one.
The city argues that, if Schulte had looked to the charter, he would have known that the procedure set forth in the charter prevailed because, where a city charter and a city ordinance conflict, the charter, "as the Constitution of the city, will overrule any other city document, including any ordinance." We reject this argument because the subdivision regulations and the specific appeal procedure set forth therein gave Schulte no reason to look to the charter for an alternative, as discussed supra. Moreover, the city's interpretation of the charter conflicts with another provision of the charter itself. Section 5.02 of the City Charter provides:
 In addition to other acts required by general law or by specific provision of this Charter to be performed by ordinance, those acts of the Council which shall be by ordinance shall include but not be limited to:
* * *
(9) Amending or repealing any ordinance previously adopted.
Because the subdivision regulation providing for a direct appeal to the court of common pleas had not been amended or repealed by ordinance as required by the charter, it would be incongruous for us to conclude that it was otherwise apparent from the charter that Section 907 no longer applied.
The city also faults Schulte for failing to follow the advice of the planning director about the procedures Schulte needed to follow "to get his split approved." The planning director had instructed Schulte to seek a variance from the BZA. Given the city's past efforts to read its ordinances so as to preclude development of this tract of land, however, we are not surprised by Schulte's reluctance to follow the path set forth by the planning director. Moreover, the subdivision regulations speak for themselves; the planning director had no authority to set forth a procedure different from that in the city's ordinances, and his advice, however well-intentioned, was certainly not entitled to more weight than the ordinances themselves.
In its brief, the city asserts that Schulte had two options when his lot split applications were denied: "he [could] either file for a variance with the Board of Zoning Appeals, as per the instructions from [planning director] Lyon, or he [could] appeal Lyon's decision to require a variance to the City Council, as instructed by the Common Pleas Court." The unhelpfulness of the latter suggestion is manifest as the "instructions" of the court of common pleas were unavailable when Schulte filed his appeal. As we discussed supra, the subdivision regulations themselves did not give Schulte notice that he should or could appeal to the city council. Likewise, Schulte was understandably skeptical about the planning director's assertion that he needed to obtain a variance.
In sum, the city has set forth no plausible argument for denying Schulte the avenue of appeal expressly set forth in Section 907 of the subdivision regulations. Although other appeal procedures were available, the city ordinances and charter did not repeal Section 907 and did not mandate the use of the other procedures. Moreover, the subdivision regulations which governed Schulte's lot split application did not give him reasonable notice that the right to appeal set forth therein was limited in any way by other ordinances or by the city charter. As such, the city's attempt to deny Schulte the right of appeal provided in Section 907 of the subdivision regulations violated Schulte's due process rights, and the trial court erred in dismissing Schulte's appeal because of his failure to exhaust the administrative appeals set forth in either the zoning code or the city charter.
In his third assignment, Schulte also claims, in the alternative, that the planning director's decision was final because the appeal to city council is not a "right to a hearing" as contemplated by R.C. 2506.01. Specifically, Schulte contends that a hearing before city council is not a hearing as contemplated by R.C. 2506.01 because no testimony or new information can be presented to the city council. Because we have held that Schulte was not required to appeal the denial of his application to the city council, we need not address whether the procedure for such an appeal would have been adequate.
Schulte's first, second, and third assignments of error are sustained.
 IV. THE LOWER COURT ERRED IN FAILING TO HOLD THAT DAVID LYON DID NOT HAVE AUTHORITY TO ACT ON BEHALF OF THE BEAVERCREEK PLANNING COMMISSION.
Schulte's brief asks that we consider this assignment of error only if his "other assignment[s] of error herein are denied." Because we have sustained his other assignments of error, we will not address this one.
 V. THE LOWER COURT ERRED IN ALLOWING BEAVERCREEK TO ASSERT NEW ARGUMENTS FOR THE FIRST TIME IN ITS REPLY.
Schulte claims that the trial court erred in permitting the city to raise a new argument in its reply to his memorandum in opposition to the motion to dismiss because he did not have an adequate chance to respond to the new argument. The city argues that it advanced the same argument throughout the trial court proceedings — that Schulte had failed to exhaust his administrative appeals — notwithstanding the fact the its motion to dismiss relied entirely on the zoning code and its reply addressed the requirements of the city charter. In our view, both of these arguments have some merit. The city did consistently argue that Schulte had not exhausted his administrative appeals, although it initially cited only the zoning code. The city's last minute assertion that Schulte could also have appealed pursuant to the charter — the argument on which the trial court primarily relied — did give Schulte little opportunity to respond. Because of our resolution of his other assignments of error, however, Schulte has suffered no prejudice in this regard.
The fifth assignment of error is overruled.
The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.
BROGAN, J. and YOUNG, J., concur.
Copies mailed to:
Robert J. Mann
Sam M. Shihab
Stephen M. McHugh
Hon. Thomas M. Rose
[1] The May 6, 1998 letter denying the second application is not in the record. The basis for the denial seems to be undisputed, however.
[2] Schulte also filed an appeal of the denial of the second application with the BZA pursuant to advice from the planning director. The appeal to the BZA was stayed pending the decision of the court.