The STATE of Ohio, Appellee,

v.

REYNOLDS, Appellant.

[Cite s *State v. Reynolds,* 148 Ohio App.3d 578, 2002-Ohio-3811.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19084.

Decided July 26, 2002.

Mathias H. Heck, Jr., Montgomery County Prosecuting Attorney, Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Christopher B. Epley, for appellant.

FAIN, Judge.

{¶ 1} Appellant Billy Ray Reynolds appeals from his conviction and sentence for abusing harmful intoxicants, in violation of R.C. 2925.31. He contends that R.C. 2925.31 is unconstitutional because the statute is vague and overbroad, failing to clearly delineate what types of conduct will lead to criminal prosecution.

He also argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He finally claims that he was denied effective assistance of counsel because his counsel failed to move for a directed verdict under Crim.R. 29, failed to call Reynolds to the stand, and failed to request a limiting instruction regarding a picture relating to a prior conviction for abusing harmful intoxicants.

{¶ 2} We disagree with Reynolds's contentions. Reynolds failed to raise an issue regarding the constitutionality of R.C. 2925.31 in the trial court and has waived all review except under a plain error analysis. Likewise, we address Reynolds's sufficiency claims under a plain error analysis because he failed to move for acquittal under Crim.R. 29. We conclude that his conviction is supported by sufficient evidence and is not against the manifest weight of evidence. Finally, Reynolds's counsel rendered effective representation. Reynolds was not prejudiced by counsel's failure to move for a directed verdict, because it would not have been granted, sufficient evidence having been presented to prove that Reynolds abused a harmful intoxicant. Moreover, trial counsel's decisions relating to which witnesses to call and what evidence to submit do not rise to the level of ineffective assistance of counsel—calling Reynolds to the stand may have opened the door to unfavorable testimony. Finally, trial counsel's strategical decision to not request a limiting instruction also does not amount to ineffective assistance of counsel. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} Officer John Moeggenberg was approached by an individual while on patrol on May 23, 2001. The individual alerted Moeggenberg to potential wrongful conduct by someone whom he recognized to be Reynolds. Reynolds was carrying a white bag in one of his hands. Moeggenberg asked Reynolds to come over and speak with him. Instead of complying with the officer's request, Reynolds fled the scene.

{¶ 4} Moeggenberg subsequently found Reynolds holding his bag and hiding in a nearby yard. Moeggenberg again requested that Reynolds speak with him. Reynolds attempted to climb a fence to escape. Moeggenberg and two other officers pulled Reynolds down from the fence and onto the ground. Reynolds was placed in handcuffs. At that time, the officers retrieved Reynolds's bag. Inside they found two bottles of beer, an aerosol paint can, and a white towel that smelled like aerosol paint. Moeggenberg approached Reynolds, who smelled of paint and alcohol and was dazed. Reynolds was later arrested for abusing harmful intoxicants under R.C. 2925.31. A jury found him guilty, a judgment of

conviction was entered, and Reynolds was sentenced accordingly. From his conviction and sentence, Reynolds appeals.

## II

{¶ 5} Reynolds' first assignment of error is as follows:

{¶ 6} "O.R.C. § 2925.31 is unconstitutionally vague, and overbroad in construction."

{¶ 7} Reynolds argues that R.C. 2925.31 is unconstitutional because the statute fails to explain with sufficient clarity what conduct is prohibited to avoid criminal prosecution under its terms.

{¶ 8} Reynolds did not make this claim at the trial court level. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its applications, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus. Nonetheless, Crim.R. 52(B) allows us to recognize "plain errors or defects affecting substantial rights," although they have not been preserved at trial, in exceptional circumstances to prevent a miscarriage of justice. The test for plain error is whether the result of the trial would have clearly been otherwise had the error not occurred. If R.C. 2925.31 were deemed unconstitutional, then the outcome of the case would clearly be different because no conviction could be predicated upon violation of the statute.

{¶ 9} A properly enacted statute is presumptively constitutional, and the party challenging it bears the burden of proof beyond reasonable doubt that the statute is unconstitutional. *State v. Sinito* (1975), 43 Ohio St.2d 98, 72 O.O.2d 54, 330 N.E.2d 896. We will apply all presumptions and rules of construction so as to uphold the statute if possible. Id.

{¶ 10} R.C. 2925.31 will only be held void for vagueness under the Due Process Clause of the Fourteenth Amendment if it does not contain "ascertainable standards of guilt." *State v. Young* (1980), 62 Ohio St.2d 370, 16 O.O.3d 416, 406 N.E.2d 499. When reviewing a challenged statute, we seek to ascertain if its terms are sufficiently explicit so as to inform those subject to it what conduct will render them liable to its penalties. Id., citing *Connally v. Gen. Constr. Co.* (1926), 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. Id.

{¶ 11} R.C. 2925.31 provides:

{¶ 12} "(A) Except for lawful research, clinical, medical, dental, or veterinary purposes, no person, with purpose to induce intoxication or similar physiological effects, shall obtain, possess, or use a harmful intoxicant."

{¶ 13} " 'Harmful intoxicant' does not include beer or intoxicating liquor but means any compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to, any of the following:

{¶ 14} "(1) Any volatile organic solvent, plastic cement, model cement, fingernail polish remover, lacquer thinner, cleaning fluid, gasoline, or other preparation containing a volatile organic solvent;

{¶ 15} "(2) Any aerosol propellant;

{¶ 16} "(3) Any fluorocarbon refrigerant;

{¶ 17} "(4) Any anesthetic gas." R.C. 2925.01(I).

{¶ 18} Reynolds claims that the statute's mandate against "obtaining, possessing, or using, a harmful intoxicant, with purpose to induce intoxication or similar physiological effects" does not provide guidance or a sufficient certainty regarding how a person obtains, possesses, or uses a harmful intoxicant. We disagree. The plain language of the statute does not prohibit the mere possession of a harmful intoxicant, but instead only punishes "obtaining, possessing, or using, a harmful intoxicant, *with purpose to induce intoxication or similar physiological effects.*" We find that the terms of R.C. 2925.31 are sufficiently explicit to provide notice of what conduct is prohibited, without requiring an individual to guess at its meaning or invoking arbitrary application.

{¶ 19} Reynolds also contends that the statute is unconstitutionally overbroad because it prohibits lawful as well as unlawful conduct. We must determine whether R.C. 2923.51 unreasonably impinges upon constitutionally protected freedoms. We conclude that it does not.

{¶ 20} We have previously stated that the overbreadth doctrine has no application to criminal statutes outside a First Amendment context. *State v. Mundy* (1994), 99 Ohio App.3d 275, 290, 650 N.E.2d 502. Even assuming, for purposes of analysis, that use of harmful intoxicants falls within the ambit of expression protected by the First Amendment, the statute does not unconstitutionally chill that protected conduct, because the statute does not criminalize any or all uses of harmful intoxicants. Rather, the statute contains a constitutional safeguard: that only use of those intoxicants to induce intoxication or similar physiological effects may constitute criminal conduct under the statute. There is

no constitutionally protected right to use harmful substances to induce intoxication or similar physiological effects. Accordingly, R.C. 2923.51 properly distinguishes criminal conduct from innocent behavior and does not impinge upon constitutionally protected conduct. Thus, we conclude that R.C. 2923.51 is not facially vague or overbroad in violation of the United States and Ohio Constitutions. Reynolds's first assignment of error is overruled.

## III

{¶ 21} Reynolds's second and third assignments of error are interrelated and provide as follows:

{¶ 22} "Appellant's conviction should be reversed because there was insufficient evidence in the record to sustain a guilty verdict."

{¶ 23} "The guilty verdict was against the manifest weight of the evidence."

{¶ 24} Reynolds complains that the trial court lacked sufficient evidence of his intent to "induce intoxication or similar psychological effects," an essential element of the charge of abusing harmful intoxicants, because the evidence showed only that he had spray paint and two beers in his possession, and his dazed state may have been a result of alcohol consumption. He claims this evidence does not demonstrate intent. Similarly, he argues that the verdict is against the manifest weight of the evidence. We disagree.

{¶ 25} Reynolds concedes that he failed to move under Crim.R. 29 for acquittal during the trial of this matter. Thus, our review is limited to plain error. Crim.R. 52(B) allows us to recognize "plain errors or defects affecting substantial rights" although they were not preserved at trial in exceptional circumstances to prevent a miscarriage of justice. The test for plain error is whether the result of the trial would have clearly been otherwise had the error not occurred.

{¶ 26} To reverse a criminal conviction under R.C. 2925.31 for insufficient evidence, we must conclude, after reviewing the evidence in a light most favorable to the state, that no rational trier of fact could have found that all elements of the statute have been proven beyond a reasonable doubt. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In reviewing manifest weight arguments, the same test is applied. The verdict will not be disturbed unless the appellate court finds that "reasonable minds could not reach the conclusion reached by the trier of facts." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 27} R.C. 2925.31(A) provides as follows:

{¶ 28} "Except for lawful research, clinical, medical, dental, or veterinary purposes, no person, with purpose to induce intoxication or similar physiological effects, shall obtain, possess, or use a harmful intoxicant."

{¶ 29} Based upon our review of the record we cannot conclude that no rational trier of fact could have found that all of the elements of the statute were not proven beyond a reasonable doubt. The record demonstrates that a rational juror could have found that Reynolds possessed a harmful intoxicant for the purpose of inducing intoxication:

{¶ 30} "A. [Officer Moeggenberg] Uh ... after a short scuffle, we—myself, Sergeant Heath, and Patrolman Wright were able to get [Reynolds] handcuffed. We were able to retrieve a white towel, uh ... with gold, uh ...—at that time we didn't know what it was, but it was a substance that smelled like aerosol paint.

{¶ 31} "Q. And what color was it?

{¶ 32} "A. Gold. And in [Reynolds's] left hand, he had a bag—a plastic bag, with two bottles of beer and a gold can—an aerosol paint can.

{¶ 33} "Q. All right. Let me ask you this. Did you have an opportunity to observe [Reynolds]?

{¶ 34} "A. Yes, I did.

{¶ 35} "Q. Did you make any observations about his physical appearance?

{¶ 36} "A. Yes, I did.

{¶ 37} "Q. And what was that?

{¶ 38} "A. He had gold paint on his fingertips and around his nose and mouth area—[Indicating].

{¶ 39} " * * *

{¶ 40} "Q * * * Did you smell anything?

{¶ 41} "A. Yes, I—we—when we first came into contact with [Reynolds] in the back yard, I was able to smell aerosol—I'm sorry, spray paint—to what I know as spray paint and alcohol comin' [sic] from him.

{¶ 42} "Q. How far from [Reynolds] were you when you smelled these odors?

{¶ 43} "A. Less than three feet.

{¶ 44} " * * *

{¶ 45} "Q * * * And could you describe [Reynolds's] demeanor when you saw him [on the day of his arrest] * * *?

{¶ 46} "A. He was very uncooperative. Uh ... seemed to be no re—he wasn't responding to our verbal or physical commands. Just, uh ... incoherent to what was going on around him, oblivious to us tellin' [sic] him, you know, get down on the ground and loosen your hands, that kind of stuff.

{¶ 47} " * * *

{¶ 48} "Q. * * * And in your experience as a police officer, have you ever had any dealings with people that have been, uh ... sniffing paint?

{¶ 49} "A. Yes, I have.

{¶ 50} "Q. And, uh ... based on your experience, what are some of the signs that someone's sniffing paint?

{¶ 51} " * * *

{¶ 52} "A. Just dazed, seem like they're confused. Stumbling around, uh ... you know, not paying attention to—can't hold a conversation with somebody.

{¶ 53} "Q. And, uh ... on May 23rd, when you had that contact with [Reynolds], was he exhibiting any of those signs.

{¶ 54} "A. Yes, he was."

{¶ 55} Further, Julie Browning, a forensic chemist and document examiner at the Miami Valley Regional Crime Laboratory, testified that the gold paint and rag on Reynolds's person when he was arrested contained harmful intoxicants. Specifically, she testified as follows:

{¶ 56} "Q. Okay. In regards to the towel, uh ... did you come to a conclusion as to what, uh ... the towel and the can [found on Reynolds's prior to his arrest] contained?

{¶ 57} "A. Yes.

{¶ 58} "Q. And what was that conclusion? .

{¶ 59} "A. That the vapors that were coming from the rag within the can, uh ... contained toluene and xylene.

{¶ 60} "Q. And for us who have no idea what those items are, can you tell us what those two . . . .

{¶ 61} "A. Uh. . . . . .

{¶ 62} "Q. . . . things are?

{¶ 63} "A. . . . yes. Uh ... toulene and xylene are the, uh ... basically the— solvent ingredients that are in Rustoleum paint, and they're both classified as volatile organic solvents.

{¶ 64} " * * *

{¶ 65} "Q. Would you describe for the Jury what a volatile organic substance—or solvent—excuse me—is?

{¶ 66} "A. Uh ... yes. Uh ... volatile—volatile organic solvent is gonna be, uh ... a carbon-containing liquid that has a low boiling point. That's what makes it volatile. And because of this, it—it, uh ... gives off vapors that are gonna be very strong, chemically smelling."

{¶ 67} Reynolds seems to believe that because no one actually witnessed him huffing the paint or sniffing the rag he cannot be convicted of abusing harmful intoxicants. Additionally, he points to the facts that the spray can contained no nozzle and that drinking alcohol could have induced the same effects witnessed by the officer to demonstrate that no rational juror could find that he abused a harmful intoxicant. Again, we disagree. The evidence shows that Reynolds had a harmful intoxicant in his possession, the paint; that the paint was observed near his nose and mouth; and that he exhibited signs of someone who had been sniffing paint. Taken together, this evidence is sufficient to find him guilty under R.C. 2925.31. Moreover, although the jury could have reached a different conclusion based on the evidence presented, the weight given to the evidence and which of competing inferences should be drawn from that evidence are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Accordingly, Reynolds's second and third assignments of error are overruled.

IV

{¶ 68} In his fourth and final assignment of error, Reynolds argues as follows:

{¶ 69} "Defendant was denied effective assistance of counsel to his prejudice and in violation of his Sixth and Fourteenth Amendment rights, as well as his rights under Article 1, Section 10, of the Ohio Constitution."

{¶ 70} Reynolds claims his counsel committed several errors that resulted in prejudice to him. These errors include counsel's failure to (1) make a Rule 29 motion for acquittal, (2) call any witnesses or present evidence on his behalf, and (3) to request a limiting instruction regarding Reynolds's prior conviction.

{¶ 71} To establish ineffective assistance of counsel, Reynolds must show deficient performance on the part of his counsel resulting in prejudice to him. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. Id. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

{¶ 72} A licensed attorney is presumed to be competent, and, as a result of this presumption, a defendant must prove that counsel was ineffective. *State v. Pattin* (July 7, 1992), Lucas App. No. L–91–339, 1992 WL 185664, citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Additionally, there is also a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Bradley,* supra.

{¶ 73} With these standards in mind, we address Reynolds's contentions. Reynolds first challenges his counsel's decision not to move for an acquittal under Rule 29. As we previously discussed in connection with Reynolds's second assignment of error, we find that the evidence presented by the state was more than sufficient to sustain Reynolds's conviction. Consequently, if defense counsel had moved under Rule 29 for an acquittal, the trial court would have overruled the motion. *State v. Fields* (1995), 102 Ohio App.3d 284, 289, 656 N.E.2d 1383. Accordingly, Reynolds has failed to show any prejudice resulting from counsel's decision not to file a futile motion.

{¶ 74} Reynolds next claims his counsel was ineffective because he chose not to call witnesses or present evidence on Reynolds's behalf. Our review of the record indicates that counsel did present some evidence on his client's behalf. Moreover, Reynolds has failed to point to any evidence counsel should have, but did not, present that would have changed the outcome of the trial. Additionally, he claims that counsel should have called witnesses on his behalf. According to Reynolds, his counsel should have, at a minimum, allowed him to testify. We disagree. A failure to call a witness is not ineffective assistance of counsel if calling that witness opens the door to unfavorable testimony that counsel might reasonably conclude would likely outweigh the value of any favorable testimony the witness might offer. *State v. Griffitts,* Montgomery App. No. 18755, 2002-Ohio-921, 2002 WL 252786. We agree with Reynolds's counsel that calling Reynolds may have done more harm than good, because it would have allowed the state to cross-examine him concerning an extensive criminal record. Thus, Reynolds failed to establish that counsel's performance was ineffective based on this alleged failure.

{¶ 75} Finally, Reynolds claims that his counsel's performance was deficient because he failed to request a limiting instruction relating to an earlier photograph used to convict Reynolds of abusing harmful intoxicants. He claims that the effect of the photo was to incite the jury to convict based on prior misconduct and that counsel was ineffective for failing to request a limiting instruction under *State v. Lenoir* (Sept. 12, 1997), Montgomery App. No. 15469, 1997 WL 566155. But we disagree.

{¶ 76} Unlike *Lenoir*, trial counsel in the case before us made a tactical decision to stipulate to Reynolds's prior conviction and admission of a photograph taken of Reynolds on March 3, 2000, for a prior charge of abusing harmful intoxicants. The March 3d photograph showed paint on Reynolds's nose, lips, and chin. A second photograph relating to this charge did not show any paint around Reynolds's nose or mouth. Counsel hoped to demonstrate that because the photograph relating to this charge was different from the March 3, 2000 photograph, Reynolds was not guilty on this occasion. If counsel had been successful, then Reynolds would not have been found guilty. Here, Reynolds has not overcome the presumption that trial counsel's actions were anything but sound trial strategy pursuant to *Bradley*, supra. While counsel's strategy ultimately did not work, it was not unreasonable, and certainly not the kind of incompetence necessary to support a claim for ineffective assistance of counsel. *State v. Smith* (1991), 75 Ohio App.3d 73, 76, 598 N.E.2d 878.

{¶ 77} Reynolds's fourth assignment of error is overruled.

## VI

{¶ 78} All of Reynolds's assignments of error having been overruled, we affirm the judgment of the trial court.

Judgment affirmed.

WOLFF, P.J., and GRADY, J., concur.