OPINION
{¶ 1} In this delayed appeal, defendant-appellant, Jesse Rodgers, appeals the judgment of the Trumbull County Court of Common Pleas, following jury trial, convicting him of two counts of Felonious Assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2), each with an associated firearm specification, pursuant to R.C. 2941.145, and one count of Having Weapons while Under Disability, a felony of the third *Page 2 
degree, in violation of R.C. 2923.13(A)(2), (A)(3), and (B). For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} The charges against Rodgers arose from a shooting incident which occurred on October 27, 2004, at the American Legion Hall ("the Legion") located in Warren Township, Ohio. The victims of the shooting were Mark Dukes and Stephanie Dean.
 {¶ 3} The previous evening, Dukes, who was at the Royal Mall in Niles, Ohio, received a call from Dean. Dukes drove to Dean's house to pick her up, after which they stopped briefly at the Legion, where Dukes' cousin worked. The two left, and drove around the area for a while, while Dean watched a movie on the DVD player in Dukes' van, but eventually returned to the Legion around 12:30 a.m.
 {¶ 4} Upon returning to the Legion, Dukes saw Rodgers and his friend, Derrick ("Popeye") Talley in the parking lot. Dukes and Dean had both known Rodgers for many years.
 {¶ 5} According to Dukes, as he was navigating the parking lot around the back of the Legion to find a parking space, Rodgers stepped in front of his van, causing Dukes to stop. Dukes testified he saw Rodgers raise his hand, at which point several gunshots were fired at the van. Both Dukes and Dean dived to the floor of the vehicle which, because it was in gear, began to roll across the parking lot and into an adjoining yard across the street. Dukes and Dean, who were both shot twice, quickly left the scene. Both were hospitalized for treatment of their injuries.
 {¶ 6} Officer Ed Airhart, of the Warren Township Police Department, arrived at the scene to investigate approximately 30 minutes after the incident was reported. By *Page 3 
the time Officer Airhart arrived, the Legion and its parking lot, were empty. Officer Airhart recovered eight shell casings near the side entrance of the Legion, and an additional two shell casings from the far edge of the parking lot. Tests conducted by the state Bureau of Criminal Investigation (BCI) later revealed that the eight shell casings found near the entrance of the Legion were fired from the same weapon, whereas the other shell casings found farther away, were not. Later investigation of Duke's van by Warren Township police revealed eight bullet holes in the driver's side.
 {¶ 7} Warren Township police took statements from both Dukes and Dean, who identified Rogers from a photographic array as the person who fired at the van.
 {¶ 8} On March 4, 2005, Rodgers, by means of secret indictment, was charged with two counts of Felonious Assault, in violation of R.C. 2903.11(A)(2), with firearm specifications, and one count of Having Weapons while Under Disability, in violation of R.C. 2923.13.
 {¶ 9} On August 7, 2006, the matter proceeded to trial. Following a three day trial before a jury, Rodgers was convicted of all counts of the indictment. On September 18, 2006, Rodgers was given a sentence of eight years imprisonment on each count of Felonious Assault, with an additional three years for each firearm specification, to be served concurrently, and one year imprisonment for Having Weapons while Under Disability, to be served consecutively with the aforementioned sentence, for a total of twelve years in prison.
 {¶ 10} After receiving leave to file a delayed appeal from this court, Rodgers appealed, assigning the following as error for our review: *Page 4 
 {¶ 11} "[1.] The appellant was denied his right under the Sixth andFourteenth Amendments to the effective assistance of counsel when defense counsel failed to protect his rights before and during trial.
 {¶ 12} "[2.] The appellant was denied his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments when a great amount of unfairly prejudicial testimony was introduced against him at trial.
 {¶ 13} "[3]. The appellant was denied his constitutional right to a fair trial under the Sixth and Fourteenth Amendments because of prosecutorial misconduct at trial and during closing argument.
 {¶ 14} "[4.] The jury's decision finding the appellant guilty of the charges was against the manifest weight of the evidence.
 {¶ 15} "[5.] The failure to notify appellant that he would be subject to mandatory post-release control after release from prison constituted prejudicial and reversible error and requires a new sentencing hearing."
 {¶ 16} For discussion purposes, Rodgers' assignments of error will be discussed out of order.
 {¶ 17} In his fourth assignment of error, Rodgers argues that his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 18} Generally, the weight to be given to the evidence and the credibility of the witnesses is for the trier of fact to determine.State v. Thomas (1982), 70 Ohio St.2d 79, at the syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52 (citation omitted). The reviewing court must consider all the evidence in the *Page 5 
record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 19} In the case sub judice, Rodgers was charged with two counts of Felonious Assault, with firearm specifications, and one count of Having Weapons Under Disability.
 {¶ 20} In order to convict Rodgers on a charge of Felonious Assault, the state is required to present evidence to prove, beyond a reasonable doubt, that he "knowingly * * * cause[d] or attempted] to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(2).
 {¶ 21} In order to convict Rodgers of the firearm specification, the state was required to present evidence, proving beyond a reasonable doubt, that Rodgers "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, * * * or used it to facilitate the offense." R.C. 2941.145(A).
 {¶ 22} In order to convict Rodgers of Having Weapons while Under Disability, the state was required to present evidence to prove, beyond a reasonable doubt, that he "knowingly * * * ha[d], carr[ied], or use[d] any firearm * * * if * * * [t]he person * * * has been convicted of any felony offense of violence * * * [or] * * * [t]he person * * * has been convicted of any offense involving the illegal possession, use, * * * or trafficking in any drug of abuse." R.C. 2923.13(A)(2) and (3). *Page 6 
 {¶ 23} With regard to the first two charges, the prosecution relied on the testimony of six witnesses: Dukes, Dean, Officer Airhart, Lieutenant Donald Bishop of the Warren Township Police Department, and Dawn Bialosky and Jonathan Gardner of BCI.
 {¶ 24} Dukes testified as follows regarding the incident:
 {¶ 25} "Well, I seen Jesse Rodgers and a guy they call Popeye. Popeye was driving his truck * * * and Jesse was standing outside of it. I rode around to the back of the Legion and come around to the side, and as I turned to go back on Main Street, Jesse was standing on the side of the van * * * so I couldn't turn on the street and he opened fire."
 {¶ 26} When asked what he meant when he said Rodgers "opened fire," Dukes stated that "I seen his hand come out and I just seen [fire from his hand], and I jumped in the middle of the van." Dukes testified that he heard the gun fire "a lot of times," and that, after the gunshots, he "jumped in the middle and * * * laid there and [Dean] called my name, she asked me * * * am I all right, and I told her, no, I got shot, and she said she got shot too, and she wanted to go home, so I jumped back in the driver's seat and I started driving off." Dukes testified that he "got hit twice," in his "side and left [buttocks]."
 {¶ 27} Dukes testified that there was nobody else standing at the corner of the Legion when he saw Rodgers reach down and then saw the fire coming from his hand, and that he had "no doubt at all" that the person who shot at him was Rodgers.
 {¶ 28} Dean also testified to the fact that Rodgers was standing outside the Legion when they arrived the second time. She stated that she had no trouble *Page 7 
recognizing that it was him because she had known him since school, and since there were lights outside the building. Dean testified that she saw Rodgers standing outside talking to somebody in a "green van," and that as Dukes maneuvered to get around the van, she "heard a gunshot." Dean, who had been watching a movie, looked in the direction of the gunshots, which came from her left, and saw "Jesse * * * still standing there" by himself. Dean testified that she saw "fire coming from the right side of Jesse, that was it, and then I was just trying to get out of the way." Dean further testified that she was "shot in the middle of [her] back" and "got a graze down the lower part of [her] back." She stated that she was "absolutely positive" that Rodgers was the man she saw standing at the corner of the Legion, and that nobody else was around him when she "saw the fire coming from him."
 {¶ 29} Officer Airhart, the lead investigator in the case, testified that when he arrived at the Legion at approximately 1:00 a.m., he recovered eight shell casings between the doorway and the parking lot area, and found broken glass in this same general area. Officer Airhart also found two additional shell casings in separate areas at the edge of the Legion parking lot, as well as a wallet found near the edge of the parking lot, all of which he learned later were unrelated to the incident.
 {¶ 30} Officer Airhart was also responsible for processing Dukes' van for evidence. Officer Airhart testified that the driver's door had five bullet holes, and three additional bullet holes were found in the driver's side of the van, behind the door, as well as a broken window on that side of the van. Airhart also testified that he recovered six bullets from the side of van, and one that was later recovered at the hospital, after having lodged itself in Dukes' wallet. *Page 8 
 {¶ 31} Lieutenant Donald Bishop of the Warren Township Police Department testified that he met with Dukes and Dean at the hospital following the incident, took their statements, and showed each photo lineups, through which they were able to identify Rodgers as their assailant. Lt. Bishop testified that he attempted to interview Popeye Talley about the incident, but he refused to talk to him. Lt. Bishop was also the individual responsible for transporting the shell casings, the bullets, and other evidence to BCI.
 {¶ 32} Dawn Bialosky, a forensic scientist and latent print examiner for the BCI also testified. Bialosky stated with regard to fingerprint evidence taken from the eight cartridge casings recovered from near the door, and stated that "six of the cartridge casings were insufficient for ridge detail and two of the cartridge casings were negative for any ridge detail." Bialosky stated that this was not an uncommon occurrence with shell casings, given the "extreme temperature that [the cartridge] comes in contact with" as the result of the gun being fired.
 {¶ 33} Jonathan Gardner, a firearms examiner for BCI, also testified. Gardner testified as to the methods used to identify firearms from which bullets are fired, and concluded, based upon his examination of the eight cartridge cases found near the doorway of the Legion, all came from the same firearm. Gardner further testified that it was not the policy of the BCI to recover DNA samples from cartridge cases. Gardner testified that the eight cartridge cases in question came from a 9 mm firearm, and that "muzzle flash" or what looks like fire coming from the end of the pistol is "not uncommon" when such a pistol is fired. *Page 9 
 {¶ 34} It is well-settled that "[d]irect evidence, circumstantial evidence, or both may establish an element of the charged offense."State v. Griffin, 1st Dist. No. C-020084, 2003-Ohio-3196, at ¶ 44, citing State v. Durr (1991), 58 Ohio St.3d 86, 92. Circumstantial evidence has been characterized as the "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."State v. Silverman, 10th Dist. Nos. 05AP-837, 05AP-838 and 05AP-839,2006-Ohio-3826, at ¶ 102 (citation omitted).
 {¶ 35} Based upon all of the aforementioned direct and circumstantial evidence, we cannot conclude that Rodgers' convictions for Felonious Assault with firearm specifications were against the manifest weight of the evidence. Even though there is no testimony from either Dukes or Dean indicating they saw Rodgers holding a gun, their testimony with regard to the "fire" coming from Rodgers' right hand, their testimony that Rodgers was the only person standing in the direction from which the shots were fired, and Gardner's testimony regarding the firing patterns found on the casings and the phenomenon of "muzzle flash" from a 9 mm pistol, as well as the testimony and medical reports related to Dukes' and Dean's injuries, is ample evidence to sustain the aforementioned convictions.[1] *Page 10 
 {¶ 36} With regard to Rodgers' convictions for Having Weapons while Under Disability, the aforementioned evidence, taken together with the parties' stipulations that Rodgers had previously been convicted for Assault and Possession of Cocaine, was enough evidence to sustain Rodgers' convictions on this count.
 {¶ 37} Rodgers' fourth assignment of error is without merit.
 {¶ 38} Since Rodgers' second and third assignments of error are related, they will be discussed together. In his third assignment of error, Rodgers argues that he was denied his right to a fair trial under the Sixth and Fourteenth Amendments due to "prosecutorial misconduct at trial and during closing argument." Specifically, Rodgers argues that the prosecutor engaged in misconduct prejudicial to his case by informing the jury of a third prior felony conviction beyond the two stipulated to by defense counsel, by arguing facts not in evidence at trial, and by commenting on the credibility of the state's witnesses during closing argument. In his second assignment of error, Rodgers argues that the trial court committed "plain error," by allowing the jury to "hear of more than one felony conviction," and by allowing the prosecutor to state during closing argument that Rodgers had "twice before been convicted of possession of cocaine."
 {¶ 39} "The test for prosecutorial misconduct is whether the remarks are improper and, if so, whether they prejudicially affected the substantial rights of the accused." State v. Lott (1990),51 Ohio St.3d 160, 165, citing State v. Smith (1984), 14 Ohio St.3d 13, 14.
 {¶ 40} Generally, "the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." State *Page 11 v. Maurer (1984), 15 Ohio St.3d 239, 266; State v. Carter,72 Ohio St.3d 545, 557, 1995-Ohio-104. Moreover, "[b]oth the prosecution and defense have wide latitude in closing arguments `as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" State v.Tumbleson (1995), 105 Ohio App.3d 693, 699 (citation omitted).
 {¶ 41} In order to determine whether a prosecutor's conduct has deprived a defendant of a fair trial, courts consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant."State v. Hill (1977), 52 Ohio App.2d 393, 396 (citation omitted).
 {¶ 42} In the instant case, Rodgers challenge focuses upon certain comments made by the prosecutor during closing argument. During closing argument, the prosecutor stated as follows: "because [Rodgers] was previously convicted of an assault and had twice before been convicted of possession of cocaine, which is possession of drugs, he wasn't allowed to hold a gun, much less use it to shoot somebody." Rodgers argues that the prosecutor's comment that Rodgers was convicted of asecond charge of possessing cocaine, rather than a single charge, as stipulated, constituted reversible error. We disagree.
 {¶ 43} It is undisputed that this comment was made to establish the requisite "prior conviction" element of the Having Weapons while Under Disability charge against Rodgers.
 {¶ 44} In the instant case, a review of the record reveals that the indictment for the charge of Having Weapons while Under Disability stated that Rodgers had been *Page 12 
convicted of "Aggravated Assault in Trumbull County Common Pleas Court Case Number, 97-CR-364, Possession of Cocaine in Trumbull County Common Pleas Court Case Numbers 01-CR-487, and * * * 03-CR-29." The exact language, as quoted herein, was entered into the record at trial as a stipulation, and was not objected to by trial counsel when entered into the record. "Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments." Tumbleson, 105 Ohio App.3d at 700
(citation omitted).
 {¶ 45} As is evidenced from the aforementioned quote, aside from the fact that two case numbers are listed, we are not convinced that it would be readily apparent to a jury, untrained in the law, whether the language applies to one or two prior possession convictions. However, even if such a comment was improper, "reversal for prosecutorial misconduct is warranted only if it `permeates the entire atmosphere of the trial.'" Id. at 699 (citation omitted).
 {¶ 46} We cannot say that this isolated comment during closing argument permeated the entire atmosphere of the trial where, even in the absence of an objection, the trial court gave the following instruction,after the comment in question was made, that "the evidence does not include * * * the closing statements of counsel." Furthermore, the trial court subsequently stated, in its instructions to the jury, that "[e]vidence was received that the Defendant was convicted of an Assault, a felony offense of violence, and of Possession of Cocaine. That evidence was received because a prior conviction is an element of the offense charged. It was not received and you may not consider it to prove the character of the Defendant or in order to show that he acted in conformity or in accordance with that character." *Page 13 
 {¶ 47} "A jury is presumed to follow the instructions given to it by the trial judge." State v. Loza, 71 Ohio St.3d 61, 75, 1994-Ohio-409. Since the aforementioned curative instructions were provided by the trial court, we cannot conclude that Rodgers was prejudiced by the prosecutor's alleged error.
 {¶ 48} Rodgers next argues that the prosecutor "improperly argued facts not in evidence" when he told the jurors Dukes "told Lieutenant Bishop the very next day about the flames shooting out of the Defendant's hand" when no testimony was given about the content of Dukes' interview with Lieutenant Bishop. Rodgers further argues that the prosecutor improperly expressed "his personal belief or opinion as to the credibility of a witness" when he told the jury that "Mark and Stephanie didn't make a mistake" about the identity of their assailant, and that "Mark and Stephanie haven't made anything up."
 {¶ 49} Finally, Rodgers argues that the prosecutor made improper comments "as to the guilt of the accused," when he stated in closing argument that "the presumption of innocence is now gone," and later stated "[t]hat is why he [Rodgers] is guilty."
 {¶ 50} It is well-settled that "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill 75 Ohio St.3d 195, 204, 1996-Ohio-222.
 {¶ 51} Moreover, defense counsel made no objections to the aforementioned statements. A failure to object to the prosecutor's allegedly improper comments waives Rodgers' claim of error, if any, "unless [such] error rises to the level of `plain error.'" State v.Mundy (1994), 99 Ohio App.3d 275, 300. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only *Page 14 
to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d. 91, at paragraph three of the syllabus.
 {¶ 52} Rodgers is correct that it "is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." Smith, 14 Ohio St.3d at 14. He is also correct that there is no direct indication in the record that Dukes "told Lieutenant Bishop the very next day about the flames shooting out of the defendant's hand." However, a complete review of the record indicates that the prosecutor did not go beyond the evidence which was before the jury in making these comments.
 {¶ 53} Dukes testified that he had "seen [Rodgers'] hand come out and I just seen the gun fire." When asked where the gunfire had come from, Dukes responded, "from him [Rodgers]." Lieutenant Bishop testified that during the interview, Dukes told him "he saw a flash from the direction where Mr. Rodgers was standing and he was the only one standing there." Examining this testimony in its entirety, we cannot conclude that the prosecutor went beyond the evidence presented at trial when making the aforementioned statement during closing argument.
 {¶ 54} With regard to the prosecutor's statements that "Mark and Stephanie didn't make a mistake," and that "Mark and Stephanie haven't made anything up," a review of the record reveals that these statements were made in rebuttal to defense counsel's closing arguments, which attempted to characterize the testimony of Dukes and Dean as untruthful and/or unreliable, by referring to the fact that neither stated they actually saw the gun; that neither called 911 following the incident; that Dean testified she talked to Dukes while he was in the hospital and "never discussed the shooting;" *Page 15 
that Dukes testified during trial that he "had no beefs with [Rodgers]," but in his statement to police said he had a confrontation with Rodgers "six or seven months ago;" and finally, that he made reference to Dukes' criminal record, and stated that "he lied [in his testimony] and we caught him in a lie."
 {¶ 55} Rodgers is correct that it is normally improper for an attorney to "express a personal belief or opinion as to the credibility of a witness." State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, at ¶ 117, citing State v. Williams, 79 Ohio St.3d 1, 12, 1997-Ohio-407. However, "the prosecution is entitled to a certain degree of latitude in summation." Lott, 51 Ohio St.3d at 165 (citation omitted). "In order to vouch for the witness, the prosecutor must imply knowledge of factsoutside the record or place the prosecutor's personal credibility in issue. Jackson, 2005-Ohio-5981, at ¶ 117 (emphasis added).
 {¶ 56} Examining the entire statement in question, the prosecutor stated as follows: "Mark and Stephanie didn't make a mistake. Mark and Stephanie haven't made anything up. There is only one person responsible for their injuries, one person standing at the corner of the building,one person with flames shooting from his hand, and that person is thedefendant. That is why he is guilty."
 {¶ 57} A review of the record demonstrates that the statements were supported solely by the testimony of Dukes and Dean, and thus, not the product of the prosecutor implying knowledge of facts beyond the record. Furthermore, as is clear from the foregoing colloquy, the prosecutor did not place his personal credibility at issue.
 {¶ 58} "It is not improper [for a prosecuting attorney] to comment fairly on a witness' credibility based upon his or her in-court testimony." State v. Henderson (Sept. *Page 16 
29, 2000), 11th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579, at *11, citing State v. Keene, 81 Ohio St.3d 646, 666, 1998-Ohio-342. Moreover, such comments will not be considered improper vouching where, "as here, the prosecutor is responding to defense counsel's attacks on a witness's credibility and refers to facts in evidence that tend to make the witness more credible." Jackson, 2005-Ohio-5981, at ¶ 120 (citation omitted).
 {¶ 59} Lastly, Rodgers attacks the aforementioned conclusion made by the prosecution, i.e., "[t]hat is why he is guilty," and the prosecutor's earlier comment that "the presumption of innocence on Counts 1 and 2 is now gone," as improper and prejudicial. We disagree.
 {¶ 60} As noted earlier, the defense did not object to these comments, thus, they are reviewed under a plain error standard. "The standard for determining plain error is whether the substantial rights of the accused have been so adversely affected as to undermine the fairness of the guilt-determining process." State v. Calloway (May 26, 1994), 8th Dist. Nos. 65431, 65432, 65433, 1994 Ohio App. LEXIS 2266, at *22 (citations omitted).
 {¶ 61} "[I]t is generally held to be error for the prosecuting attorney in his argument to the jury to declare his individual opinion or belief that [a] defendant is guilty, in such a manner that the jury may understand such opinion or belief to be based upon something which the prosecutor knows outside the evidence." State v. Thayer (1931),124 Ohio St. 1, 6 (citation omitted). However, [i]t is proper for the prosecution to comment on the evidence in closing argument and to state the appropriate conclusions to be drawn there from." State v.Sankey, 5th Dist. No. 2005-CA-00272, 2006-Ohio-5316, at ¶ 34, citingState v. Draughn (1992), 76 Ohio App.3d 664, 670, "The *Page 17 
prosecution may urge its theory of what the evidence indicates, so long as it does not mislead the jury." Id., citing State v. Malone (Sept. 24, 1986), 9th Dist. Nos. 12533 and 12542, 1986 Ohio App. LEXIS 8446, at *5;Thayer, 124 Ohio St. at 7 ("it is competent for [the prosecuting attorney] to argue the defendant's guilt from the evidence, to show that the evidence produces conviction on him and should convince them") (citation omitted).
 {¶ 62} Our review of the record reveals that each of the aforementioned comments was made by the prosecutor following his summation of the evidence presented, and after comparing it to the elements of each crime for which Rodgers was charged. Accordingly, we cannot conclude these comments were clearly erroneous. See State v.Stephens (1970), 24 Ohio St.2d 76, 83 (Though "frowned upon" by reviewing courts "instances where personal opinions of guilt are [expressed, but] predicated upon the evidence * * * are not deemed to be prejudicially erroneous.").
 {¶ 63} Based upon the foregoing, Rodgers' third assignment of error is without merit. Based upon our disposition of Rodgers' first argument in his third assignment of error, his second assignment of error is, likewise, without merit.
 {¶ 64} In his first assignment of error, Rodgers argues that his trial counsel was ineffective in several important respects, and thus, he was denied a fair trial in violation of his Sixth Amendment right to counsel.
 {¶ 65} Rodgers argues that he was denied his right to effective assistance of counsel on several fronts: First, he argues that his counsel was deficient for stipulating to two prior convictions to prove one count of Having Weapons while Under Disability. Second, Rodgers argues that his trial counsel was ineffective for failing to request the *Page 18 
court to try the third count of the indictment, i.e., his Having Weapons while Under Disability charge to the bench, rather than being tried to a jury. Third, Rodgers argues that his trial counsel was ineffective for failing to object to "any of the unfairly prejudicial prosecutorial misconduct that impacted * * * Rodgers' right to due process and a fair trial." Fourth, Rodgers argues that his trial counsel was ineffective for failing to move, pursuant to Crim. R. 16(B)(1)(g), for inspection or preservation of videotaped statements made by the two victims. Finally, Rodgers argues that his trial counsel was ineffective by disparaging him "during voir dire by referring to him as `uneducated' and repeatedly stating to jurors that he `may be black.'"
 {¶ 66} In determining whether trial counsel's assistance was so ineffective as to justify a reversal of a defendant's conviction, a criminal defendant must satisfy the two-part test set forth inStrickland v. Washington (1984), 466 U.S. 668. To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.
 {¶ 67} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.
 {¶ 68} "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of *Page 19 
counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 688-689.
 {¶ 69} "A properly licensed attorney in Ohio is presumed competent."State v. Smith (1985), 17 Ohio St.3d 98, 100 (citation omitted). Thus, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted).
 {¶ 70} Even if an appellant convinces the reviewing court that counsel's performance fell below an objectively reasonable standard, the defendant bears an additional burden to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bradley (1989), 42 Ohio St.3d 136, 142 (citation omitted).
 {¶ 71} With regard to Rodgers' first argument, we noted in our discussion of his third assignment of error, that the grand jury indictment for Having Weapons while Under Disability charged him under R.C. 2923.13(A)(2) and (A)(3), which requires proof that Rodgers "knowingly * * * ha[d], carr[ied], or use[d] any firearm * * * ha[ving] been convicted of any felony offense of violence * * * [or] * * * any offense involving the illegal possession, use, * * * or trafficking in any drug of abuse."
 {¶ 72} As is clear from the language of the aforementioned statute, the offense of Having Weapons while Under Disability may be proven by means of evidence showing *Page 20 
that Rodgers had "used any firearm," after having been previously convicted of either of the aforementioned offenses.
 {¶ 73} "The material and essential facts constituting an offense are found by the presentment of the grand jury." State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624, at ¶ 17 (citation omitted).
 {¶ 74} "The state must provide sufficient proof necessary to convince a trier of fact beyond a reasonable doubt of the existence of everyelement of an offense." State v. Smith (1990), 68 Ohio App.3d 692, 695, citing In re Winship (1970), 397 U.S. 358, 364 (emphasis added). In cases where a prior conviction "is an element of an offense, the state must prove the prior offense beyond a reasonable doubt." Id., citingState v. Weible (Mar. 15, 1989), 9th Dist. No. 13754, 1989 Ohio App. LEXIS 869, at *3-*4.
 {¶ 75} In the instant case, the grand jury indictment, by charging Rodgers of Having Weapons while Under Disability on the basis of a prior conviction of either an offense of violence or a drug offense, gave the prosecution the option to pursue conviction under either subsection. We are not aware of any authority, nor has Rodgers presented us with any, requiring the prosecution to choose between two valid alternate means of proving an offense. Even if such an action by the grand jurywere improper, "Crim. R. 12(C)(2) states that defects in an indictment are waived if not raised before trial." Colon, 2008-Ohio-1624, at ¶ 5.
 {¶ 76} Rodgers nevertheless argues that trial counsel's decision to stipulate to both prior convictions was tantamount to ineffective assistance of counsel. We disagree. *Page 21 
 {¶ 77} "Neither the state nor the trial court is required to accept a defendant's stipulation as to the existence of [a] conviction."Smith, 68 Ohio App.3d at 695 (citation omitted). That said, trial counsel's "tactical decision to stipulate to [a defendant's] prior conviction * * * [is] not unreasonable, and certainly not the kind of incompetence necessary to support a claim for ineffective assistance of counsel." State v. Reynolds, 148 Ohio App.3d 578, 2002-Ohio-3811, at ¶ 76; accord State v. Gray (Aug. 19, 1988), 6th Dist. No. L-87-393, 1988 Ohio App. LEXIS 3372, at *11-*12 ("[T]rial counsel could stipulate to the fact of a prior conviction in order to reduce the prejudicial effect of a prior criminal record. The decision is purely one of trial strategy. Thus, the decision of appellant's counsel to stipulate * * * cannot be characterized as ineffective assistance of counsel.") (citation omitted); State v. Copley, 9th Dist. No. 03CA0028-M,2003-Ohio-7172, at ¶ 20 ("By limiting the state's evidence on those crimes, trial counsel was able to keep out evidence that would likely be harmful to [his] defense, particularly evidence about his prior conviction.").
 {¶ 78} Based on the foregoing, this argument is without merit.
 {¶ 79} Rodgers next argues that his counsel was ineffective for failing to waive the jury on the Having Weapons while Under Disability charge, "in order to prevent the jury from hearing of [his] prior felony record." We disagree.
 {¶ 80} Pursuant to the Sixth Amendment of the United States Constitution, a defendant "[i]n all criminal prosecutions * * * shall enjoy the right to a speedy and public trial, by an impartial jury." Ohio Constitution Article I, Section 5, states that "[t]he right of trial by jury shall be inviolate." *Page 22 
 {¶ 81} Crim. R. 23(A) provides that "[i]n serious offense cases thedefendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury." R.C. 2945.05 provides that: "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * * Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel."
 {¶ 82} Therefore, the right to waive jury trial belongs not tocounsel but to Rodgers himself. See State v. Adams, 12th Dist. No. CA2006-07-160, 2007-Ohio-2583, at ¶ 74 ("Ultimately, the decision whether or not to waive his right to a jury trial rest[s] with appellant."). In the absence of any evidence that Rodgers expressed a desire to waive his rights to a jury trial prior to trial, we cannot conclude that his counsel was ineffective for failing to assert a right which did not belong to him.
 {¶ 83} Rodgers' second argument is without merit.
 {¶ 84} In his third argument, Rodgers asserts that he is entitled to a reversal of his conviction on the basis of ineffective assistance of counsel, due to trial counsel's failure to object "to the prejudicial misconduct of the prosecutor during closing argument." We disagree.
 {¶ 85} As discussed in our disposition of Rodgers' third assignment of error, there were two instances in which the prosecuting attorney made improper comments: First, when the prosecutor stated "that's why the defendant is guilty," and second, when he commented that "the presumption of innocence on Counts 1 and 2 is now gone." *Page 23 
 {¶ 86} Although we agree that the aforementioned comments were improper, Rodgers' defense attorney was not ineffective for failing to object to them. "Declining to interrupt the prosecutor's argument with objections, or failing to object * * * [is] not deficient performance."Keene, 81 Ohio St.3d at 668; State v. McNeill, 83 Ohio St.3d 438, 450,1998-Ohio-293 ("an attorney may reasonably elect not to interrupt opposing counsel's argument").
 {¶ 87} Accordingly, this argument is without merit.
 {¶ 88} Rodgers next argues that his trial counsel was ineffective for "failing to move for inspection * * * of the videotaped statements of the two victims pursuant to Crim. R. 16(B)(1)(g)." We disagree.
 {¶ 89} In the instant matter, Rodgers' attorney cross-examined Dukes and Dean based upon Dukes' testimony and his written statement to police, which was admitted and read into the record via stipulation. Although there was some mention in the record of videotaped statements made by both Dukes and Dean, no copy of any such statement was provided in the record for our review.
 {¶ 90} As previously mentioned, "the burden of proving ineffectiveness is on the defendant." State v. Johnson, 112 Ohio St.3d 210,2006-Ohio-6404, at ¶ 142 (citation omitted). A failure "to ask to review the witnesses' statements, pursuant to Crim. R. 16(B)(1)(g)" cannot form the basis of an ineffective assistance of counsel claim where an appellant "does not explain [how] any of the witness statements would have * * * proven useful during trial." Id. Moreover, the failure to request a Crim. R. 16(B)(1)(g) review of statements has been viewed as a "strategic decision," and thus, not a valid *Page 24 
basis for an ineffectiveness claim. See State v. Sykes, 10th Dist. No. 04AP-381, 2005-Ohio-1813, at ¶ 7.
 {¶ 91} Accordingly, this argument is without merit.
 {¶ 92} Finally, Rodgers argues that his trial counsel was ineffective for "disparaging Mr. Rodgers during voir dire by referring to him as `uneducated' and repeatedly stating to jurors that he `may be black.'" We disagree.
 {¶ 93} "Crim. R. 24 and R.C. 2945.27 afford * * * the defense the opportunity to conduct reasonable voir dire of prospective jurors."Jackson, 2005-Ohio-5981, at ¶ 48. "The Constitution * * * does not dictate a catechism for voir dire, but only that the defendant be afforded a fair and impartial jury." Id. at ¶ 64 (citation omitted). "Questions on voir dire must be sufficient to identify prospective jurors who hold views that would prevent or substantially impair them from performing the duties required by jurors." Id. at ¶ 57 (citation omitted). "[T]he fact that defendant bears the burden of establishing juror partiality * * * makes it all the more imperative that a defendant is entitled to meaningful examination at voir dire in order to elicit potential biases held by prospective jurors." Id. (citations omitted).
 {¶ 94} Accordingly, "[i]t is obvious * * * that racial, ethnic, or religious biases are realities in our society and are proper subjects of voir dire inquiry within the context of Crim. R. 24(B)(9) [now Crim. R. 24(C)(9)]." State v. Jones (1984), 20 Ohio App.3d 331, 332. "If such was not the interpretation, the rule regarding challenges for cause based on a biased state of mind would be superfluous, as grounds for such challenges could never be developed unless such state of mind was volunteered by a prospective juror, a rather unlikely happenstance not contemplated by the rule." Id. *Page 25 
 {¶ 95} Accordingly, questions posed to prospective jurors in voir dire designed to elicit the existence of bias on the basis of race or a lack of education are within the proper scope of inquiry by defense counsel, and Rodgers' final argument is without merit.
 {¶ 96} For the foregoing reasons, Rodgers' first assignment of error is without merit.
 {¶ 97} In his fifth assignment of error, Rodgers argues that the trial court failed to properly notify him that he would be subject to mandatory post release control, and thus, committed reversible error requiring a new sentencing hearing. We disagree.
 {¶ 98} "Under R.C. 2967.28, [governing post-release control], `[e]ach sentence to a prison term for * * * a felony of the second degree * * * or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused * * * physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment.' The terms for this mandatory post-release control are either three or five years." Watkins v.Collins, 111 Ohio St.3d 425, 2006-Ohio-5082, at ¶ 42, citing R.C. 2967.28(B)(1)-(3).
 {¶ 99} With regard to the issue of post-release control, the trial court engaged in the following colloquy with Rodgers:
 {¶ 100} "THE COURT: * * * [I]n a case like this, you will be placed onpost-release control for up to three years. Do you understand that?
 {¶ 101} "THE DEFENDANT: Yes. *Page 26 
 {¶ 102} "THE COURT: That is, in essence, like parole. When you are on post-release control, you have to abide by their rules and regulations. Do you understand that?
 {¶ 103} "THE DEFENDANT: Yes.
 {¶ 104} "THE COURT: If you fail to abide by their rules and regulations, they can put you on more restrictive post-release control. Do you understand that?
 {¶ 105} "THE DEFENDANT: Yes.
 {¶ 106} "THE COURT: And if the violation is deemed significant enough, you can be sent back to the penitentiary. Do you understand that?
 {¶ 107} "THE DEFENDANT: Yes.
 {¶ 108} "THE COURT: While in prison or on post-release control, if you violate the laws of the State of Ohio, you can always be charged with additional crimes. Do you understand that?
 {¶ 109} "THE DEFENDANT: Yes."
 {¶ 110} (Emphasis added).
 {¶ 111} Furthermore, the judgment entry of sentence stated as follows:
 {¶ 112} "The court has further notified the Defendant post release control is mandatory in this case up to a maximum of 3 years, as well as the consequences for violating conditions of post release control imposed by the Parole Board under Revised Code Section 2967.28."
 {¶ 113} As stated by the Ohio Supreme Court, "the preeminent purpose of R.C. 2967.28" is to inform "offenders subject to postrelease control * * * that their liberty could *Page 27 
continue to be restrained after serving their initial sentences." Id. at ¶ 52 (citation omitted).
 {¶ 114} In the case subjudice, an examination of the record convinces us that the trial court, in no uncertain terms, informed Rodgers that he would be subject to a period of post release control for a period of "up to three years." Thus, the trial court committed no error, and Rodgers is not entitled to a new sentencing hearing.
 {¶ 115} Rodgers' fifth assignment of error is without merit.
 {¶ 116} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] Rodgers cites to the testimony of defense witness, Mark Cleveland, who lives across the street from the Legion, that after he heard the shots and looked out on the Legion parking lot, there were "30, 40, 50 people," in the parking lot, as well as his testimony that, instead of a ditch in his front yard, which Dukes claimed his van got stuck in after the shots were fired, there were two telephone poles and a rock, which the van hit when it came to a rest. We find neither aspect of Cleveland's testimony, if believed, sufficient to bring the accuracy of Dukes' and Dean's testimony into question. First, Cleveland admitted that when he heard the shots being fired, he and his grandchildren "hit the floor." After the shooting ended, Cleveland went outside to observe the Legion parking lot, and found about ten people outside the entrance where the shooting occurred and 30 to 50 on the other side of the building. In the time it took for him to observe this, it is reasonable to conclude that individuals inside the Legion building might, as he did, clear out of the building once they heard shots being fired. With regard to whether Dukes' van was stuck in his yard as the result of running into a ditch or hitting a rock, the manner of the vehicle becoming stuck is not an especially salient detail, given the fact that the events in question happened so quickly. *Page 1